No. 80–1123. SAYE ET AL. *v.* WILLIAMS. C. A. 5th Cir. Certiorari denied.

JUSTICE REHNQUIST, dissenting.

Respondent was an officer in a university police department. Over the objections of petitioners, his superiors, respondent desired to run for the office of County Sheriff. The chief of the local police force, Chief Brown, also desired to run for that office. Chief Brown was involved in an accident, and respondent approved an accident report which stated among other things that Brown had been drinking. The next morning petitioners, at the request of Chief Brown, had the accident report changed so as to read "Not known if drinking." Respondent objected to the modified accident report, and disclosed these events to his father, who in turn leaked the original and altered accident reports to the press. When petitioners learned of the leak, they fired respondent. Respondent subsequently filed suit alleging that he had been fired for engaging in protected First Amendment activity.

After a jury trial, respondent was awarded compensatory and punitive damages against both petitioners. Relying on the so-called *Pickering* defenses, see *Pickering* v. *Board of Education,* 391 U. S. 563 (1968), petitioners had sought to defend the discharge on the grounds that respondent, by leaking confidential police material for his own political ends, had destroyed a harmonious working relationship with his superiors. Petitioners also contended that they were entitled to "official immunity" from damages, in that they had in good faith discharged respondent for violating the department's policy against disclosing confidential police investigative reports. See *Wood* v. *Strickland,* 420 U. S. 308 (1975);

*Scheuer* v. *Rhodes,* 416 U. S. 232 (1974). The District Court, however, held that evidence of these defenses was inadmissible into evidence, and it declined to instruct the jury as to "qualified or good-faith" immunity.

The Court of Appeals for the Fifth Circuit affirmed. *Williams* v. *Board of Regents of the University System of Georgia,* 629 F. 2d 993. It first held that evidence of the confidentiality policy, which went directly to the issue of official immunity, could only be admitted if the policy

> "(1) factually existed, (2) was consistent with other state statutes and regulations, (3) was not vague, (4) did not proscribe protected first amendment speech overbroadly, (5) was communicated to the appellee and (6) was not void as a matter of public policy in its instant application." *Id.,* at 1000 (footnotes omitted).

Although the court conceded that petitioners had shown enough evidence of the existence of a confidentiality policy to establish a jury question, the court held that the other factors were not present, namely, that the confidentiality policy conflicted with state regulations. Because the evidence of the confidentiality policy was inadmissible, the court concluded that there was insufficient evidence to warrant a jury instruction as to the existence of "good-faith" immunity.

It seems to me that the Court of Appeals' six-prong "test" unjustifiably expands the principles announced in such cases as *Wood* and *Scheuer.* In those cases, we held that official immunity is available where there is evidence that the official has a subjective good-faith belief in the lawfulness of his action and where the action is not inconsistent with undisputed and settled law. Accordingly, I believe that the novel test announced by the Court of Appeals warrants review.

The court next rejected petitioners' contention that the District Court erred in refusing to permit petitioners to introduce evidence and to charge the jury as to their *"Pickering*

defenses," based on this Court's decision in *Pickering* v. *Board of Education, supra.* Petitioners argued that they should have been permitted to show the necessity of maintaining discipline in an organization such as a police department and to show how respondent's conduct leads to a breakdown of that discipline. The Court of Appeals disagreed, finding that the District Court correctly found that respondent's First Amendment interests outweighed petitioners' interests in maintaining discipline. 629 F. 2d, at 1003.

I disagree. In *Pickering,* the Court held that whether speech of a public employee is protected depends upon "a balance between the interests of the [employee] as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U. S., at 568. But we also recognized that even accurate public criticism of a superior by a subordinate might warrant dismissal where the relationship between superior and subordinate is of such a nature that public criticism would seriously impair the working relationship between them. *Id.,* at 570, n. 3. As the late Judge Leventhal explained in *Meehan* v. *Macy,* 129 U. S. App. D. C. 217, 230, 392 F. 2d 822, 835 (1968), cited with approval in *Arnett* v. *Kennedy,* 416 U. S. 134, 161–162 (1974):

"We think it is inherent in the employment relationship as a matter of common sense if not common law that an employee in appellant's circumstances cannot reasonably assert a right to keep his job while at the same time he inveighs against his superiors in public with intemperate and defamatory lampoons. We believe that Meehan cannot fairly claim that discharge following an attack like that presented by this record comes as an unfair surprise or is so unexpected and uncertain as to chill his freedom to engage in appropriate speech." (Footnote omitted.)

In this case, I believe that the Court of Appeals struck the wrong balance. As it itself acknowledged:

"Viewed in the light most favorable to [petitioners], it was established that the 'leak' of the altered report would irreparably damage the working relationship between [petitioners] and Williams. Although Saye was not Williams' immediate superior, there was frequent communication and necessity for working together. It is clear, therefore, that disharmony would result. Additionally, as [petitioners] argue, discipline is a necessary component of a smoothly-operating police force. Although this necessity of discipline does not rise to the same level as required by the military, see *Parker v. Levy,* 417 U. S. 733 . . . (1974), discipline must be maintained between police officers during periods of active duty." 629 F. 2d, at 1003.

Though the court observed that "disharmony would result," it nevertheless concluded that evidence of "this very real threat of disruption, disharmony and breakdown of discipline" was properly excluded by the trial court, not only as an absolute defense but even as a basis of a good-faith "official immunity." *Ibid.* In my view, the court gave too little weight to the need for maintaining a close working relationship in a quasi-military organization like a police department. And quite unlike the situation in *Pickering,* respondent's actions here called into question the integrity of his immediate superiors with whom he worked daily.

More significantly, I believe that the decision here conflicts with those of other Circuits. In *Sprague v. Fitzpatrick,* 546 F. 2d 560 (CA3 1976), cert. denied, 431 U. S. 937 (1977), the court took a much broader view of the *Pickering* defenses than did the court here. It concluded that the public criticism of the District Attorney by his first assistant precluded any future working relationship between the parties and hence was unprotected. See *Clark v. Holmes,* 474 F. 2d 928

(CA7 1972), cert. denied, 411 U. S. 972 (1973). Likewise in this case, I believe petitioners should have been permitted to introduce evidence as to the breakdown of a minimally acceptable working relationship between the parties as well as to the maintenance of necessary police department discipline.

Viewed in one context, I can understand why this case is not a particularly attractive candidate for review. Like so many other cases, it involves a number of factual disputes, with conflicting evidence on both sides. Nonetheless, the legal issues presented by the case—whether the trial court erred in refusing to admit into evidence material going to "qualified immunity" and *Pickering* defenses—are sufficiently isolated from the factual controversies so as to make this case a suitable vehicle for review. I would grant certiorari to consider those legal issues.