775 P.2d 254

**Henry M. JACOBS, Jr., Plaintiff–Appellee,**

v.

**Charles W. MEISTER, Gail Shannon, and Derrell W. Bulls, Defendants–Appellants.**

**No. 9093.**

Court of Appeals of New Mexico.

April 21, 1989.

Certiorari Denied June 2, 1989.

Steven L. Tucker and Jones, Snead, Wertheim, Wentworth & Rodriguez, P.A., Santa Fe, for plaintiff-appellee.

Raymond W. Schowers, Marianne Woodard, and Sutin, Thayer & Browne, P.C., Santa Fe, for defendants-appellants.

## OPINION

APODACA, Judge.

Plaintiff Henry M. Jacobs, Jr. (Jacobs), a nontenured assistant professor at Eastern New Mexico University from 1970 to 1975, brought this civil rights action under 42

U.S.C. Section 1983 (1970), contending the original defendants violated his constitutional rights in failing to renew his contract for 1975–76. As defendants, he named members of the university administration, individual members of the Board of Regents (regents), and the board itself. The board and its members, except Stratton, were dismissed by summary judgment prior to the first trial. After the first trial, defendants Meister, Shannon and Bulls (defendants), and Stratton appealed a judgment on the jury verdict for Jacobs. The supreme court remanded for a new trial. *Jacobs v. Stratton*, 94 N.M. 665, 615 P.2d 982 (1980) (*Jacobs I*). The facts of this case are set out fully in that opinion and we refer only to those facts necessary to disposition of this appeal.

After a second, nonjury trial, the trial court found Stratton not liable, but entered judgment in favor of Jacobs against defendants. The trial court awarded damages for emotional distress, based upon its determination that Jacobs had been deprived of his rights under the first and fourteenth amendments to the United States Constitution in his termination. Defendants appeal this judgment, arguing the evidence adduced at trial does not support the trial court's judgment that Jacobs' constitutional rights were violated or the award of damages. We disagree and affirm the trial court.

First Amendment

■ During his five years at the university, Jacobs published articles and engaged in other speech activities, frequently voicing his criticism of the university administration. He was also involved in organizational activities for the purpose of expressing faculty opinion of the administration. The reasons given by the administration for nonrenewal were Jacobs' failure to make satisfactory progress toward securing his doctorate and teaching techniques "inimical to the high standards sought by" the university. After review, the board repeated these reasons for affirming the administrative decision not to renew Jacobs' teaching contract. Jacobs contends the reasons given were pretextual and that

the real reason for nonrenewal was his speech activity.

In *Jacobs I*, the supreme court previously remanded this case for litigation under the burden of proof allocation described in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Mt. Healthy* set forth a definitive procedure for determining whether a governmental agency's adverse job decision violated the employee's first amendment rights. First, the employee must carry the burden of showing his conduct was constitutionally protected. Second, the employee is required to show the protected conduct was a substantial or motivating factor in the agency's adverse employment decision. If these burdens are met, the burden then shifts to the agency to show that it would have reached the same decision absent the protected conduct.

Under *Mt. Healthy*, Jacobs had the initial dual burden of showing his conduct was constitutionally protected and was a motivating factor in the decision not to renew. *Id.* The burden then shifted to defendants to show they would have reached the same decision in the absence of protected conduct. *Id.* The trial court essentially concluded Jacobs carried his burden under *Mt. Healthy* and defendants failed to do so.

The first element that Jacobs was required to prove—that his conduct was constitutionally protected—is partly factual and partly a matter of legal doctrine. Not all speech by a public employee is entitled to first amendment protection.

In *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), Myers, an assistant district attorney, was upset about her transfer to another division of the office. For this reason, she prepared a questionnaire soliciting the opinions of co-workers regarding the office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressure to work in political campaigns. Myers was terminated on the ground that she had created a "mini-insurrection" within the office. The Supreme Court upheld the termi-

nation, stating that when an employee speaks upon matters only of personal interest, rather than of public concern, disciplinary action taken because of such speech is not ordinarily prohibited by the first amendment. The Court recognized that Myers' question concerning pressure on employees to work on political campaigns touched on a matter of public concern. But taking the question in context, and recognizing that close working relationships are essential to fulfilling public responsibilities, the Court held that the discharge did not offend the first amendment.

Thus, the Supreme Court adopted a balancing approach, weighing the needs of the government as an employer against the public interest in an employee's speech, to determine whether the speech is protected by the first amendment. *See Pickering v. Board of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *See also* L. Tribe, *American Constitutional Law*, § 12–18 at 930–31 n. 15 (2d ed. 1988).

With this background in mind, we review the findings and conclusions of the trial court.

Neither party disputes that during Jacobs' employment as a professor of business administration at the university, he made a number of public statements critical of the university administration. He criticized the university administration in newspaper articles; in a report to the North Central Association, the association that accredits the university; in communications with legislators; and in the courses he taught.

Defendants, however, argued below, and continue to argue on appeal, that their decision not to rehire Jacobs resulted from Jacobs' inadequate teaching techniques and his failure to make progress toward a doctoral degree.

The trial court found that Jacobs' criticism of the university "was a substantial or motivating factor" in defendants' decision to terminate his employment, that defendants would not have terminated Jacobs "absent his conduct in criticizing" the university administration, and that defendants' stated reasons for terminating Jacobs were pretextual in nature. Although those issues were hotly contested at trial, we believe the trial court's findings are supported by substantial evidence. We have no right to reject them. *See Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App.1985) (appellate court may not reweigh the evidence or substitute its judgment for that of the trier of fact); *Anaconda Co. v. Property Tax Dep't*, 94 N.M. 202, 608 P.2d 514 (Ct.App.1979) (facts found by trial court shall not be disturbed by appellate court so long as they are supported by substantial evidence).

Defendants contend, however, that even if Jacobs' criticism of the university was the motivation for the decision not to rehire him, his first amendment rights were not violated. They argue that, under *Connick*, Jacobs' criticism was not protected by the first amendment because it undermined close working relationships and disrupted the proper functioning of the university. As support for this argument, they point to three findings of fact by the trial court:

33. The decision not to rehire Mr. Jacobs was related to the educational process and his working relationship with the University and was supported by a reasonable basis in fact.

. . . .

46. Plaintiff's statements were derived [directed] at persons he would normally be in day-to-day contact so as to interfere with a close working relationship and the defendants had an interest in promoting the efficiency of public service performed through its employees.

47. Jacobs['] conduct in criticizing the administration did interfere with promoting the efficiency of rendering public services at ENMU.

With respect to findings 46 and 47, we note these findings establish factors considered by *Connick* as arguing against a first amendment right. Yet, those factors are not dispositive of the issue. In *Connick*, the Supreme Court held that the overriding concern in Myers' conduct was her own employment situation, not matters of public interest. Here, Jacobs' statements had very little to do with his individ-

ual employment situation and addressed matters of great public interest. Even if his criticism of such matters disrupted university activities and affected his working relationships with his superiors and colleagues, the public interest in his comments could provide a first amendment protection to him. A university may have the right to require its employees to channel their criticism in a way that minimizes disruption to the university, but defendants have not contended that Jacobs was terminated for failure to follow appropriate channels. In summary, we conclude that, despite findings 46 and 47, the record and the trial court's other findings amply support the trial court's conclusion that Jacobs' criticism of the university was protected by the first amendment.

With respect to finding 33, we believe the "decision not to rehire" referred to in that finding is the decision made by the regents after defendants had decided not to rehire him. The finding is a verbatim adoption of one proposed by defendants that followed another requested finding relating to the proceedings before the regents. This finding is related to defendants' contention, discussed below, that their decision not to rehire Jacobs caused him no harm because the ultimate decision was made by the regents. The finding does not relate to defendants' motive in not rehiring Jacobs. Although this finding could be read to contradict the findings of the trial court regarding defendants' motives, we will presume that the trial court did not make inconsistent findings. *See Ledbetter v. Webb*, 103 N.M. 597, 711 P.2d 874 (1985) (in case of doubtful or ambiguous findings, appellate court shall indulge every presumption to sustain judgment and reconcile seeming inconsistencies, if possible, to avoid what may be challenged as contradictions).

If the trial court findings can be reconciled by a reasonable reading, we will adopt that reading. *Id. See also State ex rel. Goodmans Office Furnishings, Inc. v. Page & Wirtz Constr. Co.*, 102 N.M. 22, 690 P.2d 1016 (1984) (findings are to be liberally construed in support of a judgment and are sufficient if a fair considera-

tion of all of them taken together justifies the trial court's judgment). We do not believe that it requires any mental gymnastics to reconcile the trial court's findings. Thus, we uphold those findings and consequently the conclusion that defendants' decision not to rehire Jacobs was a violation of his first amendment rights.

Causation

■ Defendants also argue that, even assuming their decision not to rehire Jacobs violated his first amendment rights, they are nevertheless not liable to Jacobs. They contend that the regents made the ultimate decision not to rehire Jacobs and that the trial court found that the regents had not violated Jacobs' constitutional rights. This argument raises a question of causation.

Resolution of this question depends on the nature of the violation of Jacobs' rights. For example, if defendants' liability was predicated solely on their failure to grant Jacobs a proper hearing (a violation of procedural due process), then their liability would be limited if the regents later granted a hearing satisfying the requirements of procedural due process. Under this premise, defendants would be liable only for damages caused by the delay and, perhaps, for emotional distress proved to have resulted from the "insult" of not being granted a proper hearing in the first instance. *See Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In this context, Jacobs would have been entitled to a hearing in which he was granted the procedural protections provided by the due process clause; once he was provided such a hearing, he would have had no claim for any further damages.

Yet, in determining the consequences of defendants' violation of Jacobs' first amendment rights, we believe the later decision of the regents did not absolve defendants from liability. In this connection, we are persuaded by the reasoning in *Professional Association of College Educators v. El Paso County Community College District*, 730 F.2d 258, 266 (5th Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 248, 83

L.Ed.2d 186 (1984), in which the defendants argued they would not be liable for the firing of a teacher, despite a constitutionally improper notice, because the decision was made by the school board after an independent hearing. The court in *El Paso County Community College District* stated:

It is not necessary that the improper motive be the final link in the chain of causation: if an improper motive sets in motion the events that lead to termination that would not otherwise occur, "intermediate step[s] in the chain of causation" do not necessarily defeat the plaintiff's claim. *Bowen v. Watkins,* 669 F.2d 979, 986 (5th Cir.1982).

*Id.* at 266.

Relying on this "set in motion" principle, we conclude that the summary judgment granted in favor of the regents did not insulate defendants from liability for the violation of Jacobs' first amendment rights. The facts here do not indicate a situation under which the regents would independently review every professor's contract to determine whether it should be renewed. Were that the case, we might be able to say the decision of the regents ended the potential liability of defendants. Here, however, the hearing before the regents was a special proceeding. The regents would not have reviewed defendants' decision if defendants had not refused to renew Jacobs' contract. Thus, defendants' decision, which was based on a constitutionally improper motive, set in motion the events that led to Jacobs' termination.

### Due Process

Having held against defendants on the first amendment issue, we need not address the equal protection and procedural due process issues. However, because of our supreme court's mandate in *Jacobs I,* we discuss briefly why we do not rest affirmance of this appeal on the procedural due process issue.

■ *Jacobs I,* in discussing the issue of procedural due process, stated, "[i]t is also clear that Jacobs had a constitutional right to have the procedures followed which were set out in the faculty handbook, because these procedures gave him an entitlement." 94 N.M. at 667, 615 P.2d at 984. *Jacobs I* also stated, however, "[i]t is clear that ... Jacobs could be discharged for no reason whatever, or for a variety of reasons." *Id. Jacobs I* was decided more than eight years ago. Since then, decisions of the United States Supreme Court have established, in our view, that the two passages quoted above from *Jacobs I* may be inconsistent. If Jacobs could be discharged for "no reason whatever," then he was not entitled to any procedural due process protections with respect to his termination.

In *Olim v. Wakinekona,* 461 U.S. 238, 250–51, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983), the United States Supreme Court wrote:

[Due] [p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. *If officials may transfer a prisoner "for whatever reason or for no reason at all," there is no such interest for process to protect.* The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right. (Footnote omitted, citations omitted, emphasis added.)

Earlier in that opinion, the Court stated:

These cases demonstrate that *a State creates a protected liberty interest by placing substantive limitations on official discretion.* An inmate must show "that particularized standards or criteria guide the State's decisionmakers." *If the decisionmaker is not "required to base its decisions on objective and defined criteria," but instead "can deny the requested relief for any constitutionally permissible reason or for no reason at all," ibid., the State has not created a constitutionally protected liberty interest.* (Emphasis added, citation omitted.)

461 U.S. at 249, 103 S.Ct. at 1747.

Although *Olim* dealt with procedural due process protections for liberty interests,

the same analysis was later applied to property rights in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). There, the Court said:

> The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty.

Although disapproving of the Supreme Court's doctrine, Professor Tribe has concluded:

> The practical impact of the Court's adoption of a positivist approach to the definition of "property" ... is that a public employee can count on procedural due process protection only if the law or contract defining the employee's job expressly provides that the employee can be discharged *only* for cause.

L. Tribe, *supra*, § 10–10 at 697.

He further stated: "Hence, if a statute gives an official 'unfettered discretion,' it creates no protected interest, even if the exercise of that discretion is channelled through required procedural mechanisms." *Id.* at 698.

■ Jacobs' claim, that he was not rehired because of a violation of his first amendment rights, does not in itself provide him with any right to procedural due process from his government employer. The first amendment claim and the procedural due process claim are independent. *Mt. Healthy* stated at 429 U.S. 283–84, 97 S.Ct. 574–75:

> Even though [employee] could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him, *Board of Regents v. Roth*, 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548] (1972), he may nonetheless establish a claim to reinstatement if the decision not to rehire

him was made by reason of his exercise of constitutionally protected First Amendment freedoms.

Implicit in this statement is the proposition that the employee in *Mt. Healthy* had no procedural due process right to a pretermination hearing despite his first amendment claim. Similarly, in *Perry v. Sindermann*, 408 U.S. 593, 599 n. 5, 92 S.Ct. 2694, 2698 n. 5, 33 L.Ed.2d 570 (1972), the Court discussed a plaintiff's right to procedural due process without any reference to his first amendment claim. The Court said:

> The Court of Appeals suggested that the respondent might have a due process right to some kind of hearing simply if he *asserts* to college officials that their decision was based on his constitutionally protected conduct. [*Sindermann v. Perry*,] 430 F.2d [939], at 944 ([5th Cir. 1970)]. We have rejected this approach in *Board of Regents v. Roth, ante*, [408 U.S.] at 575 n. 14 [92 S.Ct. at 2708 n. 14].

In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Court stated that it might require a hearing before a direct infringement upon first amendment rights, such as a seizure of books or an injunction against meetings. But the Court continued: "[w]hatever may be a teacher's rights of free speech, the interest in holding a teaching job at a state university, *simpliciter*, is not itself a free speech interest." *Id.* at 575 n. 14, 92 S.Ct. at 2708 n. 14.

■ Although we are bound by the mandate in *Jacobs I*, and would not rest a holding on the above analysis without seeking permission from our supreme court to re-examine the issue, *see State v. Manzanares*, 100 N.M. 621, 674 P.2d 511 (1983); *Crane Co. v. American Standard, Inc.*, 603 F.2d 244 (2d Cir.1979), *but see Morrow v. Dillard*, 580 F.2d 1284 (5th Cir.1978), we recognize that our supreme court is not bound by the law of the case when there has been subsequent authority from the United States Supreme Court. For these reasons, we anticipate that any holding by this court based on the discussion of procedural due process in *Jacobs I* would be

reversed on certiorari. Thus, we base our decision solely on the analysis of the first amendment issue.

### Damages

The trial court found that, "[a]s a direct and proximate result of the defendants' Meister, Shannon and Bulls [sic] wrongful termination of the plaintiff, plaintiff has incurred damages for emotional distress in the amount of $60,000.00." Defendants argue there was insufficient evidence to support this finding solely because Jacobs did not produce medical expert or other evidence to support the award of damages for emotional distress.

Initially, defendants did not submit to the trial court any requested findings addressing the issue of damages. Yet, after the trial court found liability, defendants asked that the findings be supplemented by an apportionment of the damages already awarded. They also requested the trial court to strike the finding on emotional distress damages on the same basis urged on appeal, that is, that Jacobs had produced no corroborative evidence to support his claim and his own testimony that the emotional injury he had incurred was caused by defendants' wrongful conduct. Defendants never requested a finding that Jacobs had failed to produce any evidence of causation. Instead, they argued to the trial court, as they contend in their brief on appeal, that Jacobs' evidence, consisting of his own testimony, was unacceptable without supporting expert testimony.

We believe defendants' contention, that Jacobs' proof of causation required expert medical corroboration to support the trial court's finding of causation, is incorrect. For the reasons that follow, I would hold that Jacobs' own testimony was substantial evidence of emotional injury sufficient to support the award of damages and that the corroborative evidence defendants insist be required is simply not necessary.

■ The United States Supreme Court, in *Carey*, determined that a plaintiff claiming emotional distress caused by deprivation of his constitutional rights under Section 1983 must prove that an injury actual-

ly occurred. *Carey* recognized that "[d]istress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff." *Id.*, 435 U.S. at 263–64, 98 S.Ct. at 1052–53. *See also Dominguez v. Stone*, 97 N.M. 211, 638 P.2d 423 (Ct.App.1981) (emotional distress can be proved, in part, by the circumstances of the wrong). In *Carey*, the Section 1983 claims were limited to procedural due process and defendants were not held liable for deprivation of other constitutional rights, as in the case before us.

After *Carey*, the Supreme Court in *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), held that where a plaintiff proved he has been deprived of substantive constitutional rights, the proof requirement of actual injury resulting from the wrongful conduct is no less than when a plaintiff claims he has been deprived of procedural due process alone. In *Carey*, the plaintiffs relied upon the trial court to presume injury from constitutional deprivation and did not produce any evidence of actual injury. In *Stachura*, the jury was erroneously instructed to find inherent value in the constitutional right lost. Such was not the case here; the trial court neither presumed injury nor attached an inherent value to Jacobs' rights under the first and fourteenth amendments. Instead, Jacobs himself testified of the injury, its cause, and the effects it had on his life.

■ As required by *Carey* and *Stachura*, New Mexico courts have placed the burden of proving the existence of injury and resulting damages with reasonable certainty on the plaintiff who is seeking compensatory damages. *See Gulf Ref. Co. v. Etcheverry*, 85 N.M. 266, 511 P.2d 752 (Ct. App.1973). An award of damages must be based upon the evidence adduced at trial. *See Sanchez v. Martinez*, 99 N.M. 66, 653 P.2d 897 (Ct.App.1982). Where plaintiff is claiming emotional distress, this court has not required that proof of the injury be by expert testimony, as argued by defendants. *See Sweitzer v. Sanchez*, 80 N.M. 408, 456 P.2d 882 (Ct.App.1969) (evidence of acute

496

emotional distress came from plaintiff; it was trial court's function to judge plaintiff's credibility and determine weight to give his testimony). Nor have defendants presented us with any basis for requiring special proof in Section 1983 cases. Under New Mexico law, Jacobs had the burden of proving causal connection between the wrongful conduct and his injury. *Hebenstreit v. A.T. & S.F. Ry.*, 65 N.M. 301, 336 P.2d 1057 (1959). Defendants do not cite to any authority for their contention that, in Section 1983 cases, causal connection also must be shown by expert medical testimony. *See In re Adoption of Doe*, 100 N.M. 764, 676 P.2d 1329 (1984).

■ Having concluded that Jacobs could prove emotional distress resulting from deprivation of his constitutional rights without the need of expert testimony, I now turn to the question of whether there was substantial evidence to support the finding on damages.

Substantial evidence is such relevant evidence as a reasonable mind may accept as adequate to support a conclusion. *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 428 P.2d 625 (1967). On review, this court does not weigh the evidence, but looks to see whether the evidence, viewed in the light most favorable to the trial court's findings, affords substantial evidence. *Id.* Based on my previous discussion, I believe Jacobs proved "the nature and circumstances of the wrong." *Carey v. Piphus*, 435 U.S. at 264, 98 S.Ct. at 1052. Likewise, my review of the record reveals that Jacobs also produced evidence of the effect of defendants' conduct on him. *Id.*

Defendants have conceded Jacobs testified he was unable to obtain another permanent teaching position after leaving the university due to the circumstances surrounding defendants' refusal to rehire him. Injury to his self-image as a professional teacher and to his ability to retain other gainful employment may be inferred from his testimony. It is also clear that the extent of the injury was affected by the fact, later proved at trial, that he was terminated for having exercised his first amendment rights. Additionally, Jacobs

testified his eventual divorce from his wife and the resulting separation from his family were caused by his inability to support his family, which, in turn, resulted from the manner in which he lost his job with the university. I find this evidence sufficient to support the trial court's finding on damages for emotional distress caused by defendants' wrongful conduct. *See Topmiller v. Cain*, 99 N.M. 311, 657 P.2d 638 (Ct.App.1983) (compensatory damages are recoverable if they proximately result from violation of a legally recognized right of the person seeking damages). Although defendants now urge that the period elapsing between the time of the constitutional deprivation and the time of the injury supports a finding of no causal connection, I believe the record is absent of any evidence presented by defendants to rebut Jacobs' testimony on this issue.

Even though Jacobs' testimony on emotional distress may be weak and thus fall at the low end of the scale of proof required to support a finding that such injury should be compensated in damages, I nonetheless conclude that the record supports the finding on damages. *Cf. Sweitzer v. Sanchez.* The standards for determining emotional distress damages in a tort action are stated in *Dominguez*, which in turn are adopted from the Restatement (Second) of Torts, Section 46 (1965). *Dominguez* recognized that whether a plaintiff has established emotional distress and damages resulting from such injury is to be determined by the fact finder. In instances where a plaintiff claims emotional distress resulted from the unconstitutional conduct of a defendant, this court must rely on the experience of the trial judge to determine causation and magnitude of injury and to arrive at the appropriate compensation in damages. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The trial court can properly award substantial damages as compensation for harms that normally flow from a tortious injury without specific proof of their existence, although it should consider any evidence that the harm is greater or less than what ordinarily results from such conduct. Restatement, *su-*

*pra,* § 912 (1979). It is reasonable to conclude that the involuntary loss of a job would cause emotional distress, and that the distress would be greater in circumstances such as this, where Jacobs devoted several years to a career that was terminated on pretextual grounds.

On appeal, defendants have not argued that the amount of damages was excessive. We will not disturb the award unless it appears to be improperly influenced or based upon a patently mistaken view of the evidence. *See Grammer v. Kohlhaas Tank & Equip. Co.,* 93 N.M. 685, 604 P.2d 823 (Ct.App.1979). In particular, as with pain and suffering, the law cannot fix a standard for measuring emotional distress, *id.,* and this court must leave the proper compensation to the judgment of the fact finder. *See Mathis v. A.T. & S.F. Ry.,* 61 N.M. 330, 300 P.2d 482 (1956); *Sweitzer v. Sanchez; Strickland v. Roosevelt County Rural Elec. Coop.,* 99 N.M. 335, 657 P.2d 1184 (Ct.App.1982), *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983). We conclude that the finding on damages was supported by substantial evidence.

We affirm the judgment in favor of Jacobs. He has requested attorney fees for services rendered in this appeal, pursuant to 42 U.S.C. Section 1988 (1982). We remand to the trial court for consideration of his request for such fees and an appropriate award. *See Jacobs I.*

IT IS SO ORDERED.

BIVINS, C.J., concurs in part and dissents in part.

HARTZ, J., specially concurs.

BIVINS, Chief Judge (concurring in part and dissenting in part).

I concur in affirming the trial court's finding defendants liable for violating plaintiff's first amendment rights. I disagree that substantial evidence exists to support an award of damages for emotional distress.

I disagree with the characterization of defendants' argument as asserting "there was insufficient evidence to support this finding ['plaintiff has incurred damages for emotional distress in the amount of $60,-000.00'] *solely* because Jacobs did not produce medical expert or other evidence to support the award of damages for emotional distress." (Emphasis mine.) Defendants' argument relating to damages is broken down into four parts: first, the trial court's finding is not supported by any evidence of emotional distress; second, damages for emotional distress cannot be presumed to flow from the deprivation of constitutional rights, citing *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); third, even if plaintiff suffered emotional distress, there was no medical evidence to support the damage award; and fourth, even if plaintiff proved emotional distress, it was not caused by deprivation of his constitutional rights.

Thus, it is clear that defendants assert four claims under the damage issue, not two. Further, use of the phrase, "Jacobs had produced no ... corroborative evidence to support his claim," implies there was some evidence to support the award of damages for emotional distress, and that defendants are claiming the lack of other corroborative evidence. I do not believe this is accurate. Defendants are claiming that, through the testimony of Jacobs or otherwise, there was no evidence of emotional distress; and in my opinion they are correct. Plaintiff failed to point out in his brief any evidence in the record which supports his emotional distress claim. My own review of the record revealed nothing which supports his claim.

While acknowledging that defendants requested supplemental findings and also requested the trial court to strike the finding on emotional distress damages, it is not clear if the opinion is suggesting that defendants may have waived their claim to challenge the finding of damages by failing to request findings ·on that subject. If defendants had any obligation to alert the trial court as to lack of proof of emotional distress, it arose *after* the trial court made its finding; defendants satisfied that obligation by requesting supplemental findings. *See* SCRA 1986, 1–052(B)(2). Defen-

dants filed two motions to amend the trial court's findings and conclusions, one on May 23, 1985, the other on May 29, 1985. Since judgment was not entered until December 16, 1985, these motions were timely under Rule 1–052(B)(2). In the first motion defendants moved to strike finding No. 50 (the emotional distress finding). In their brief in support of that motion, defendants specifically called the trial court's attention to the lack of evidence to support an award for emotional distress, and alerted the trial court to the need for such proof under *Carey*. The trial court was sufficiently alerted before entry of the judgment to enable it to avoid error. Defendants' claim of error was preserved.

I will reverse the order of defendants' first two claims under this point and address the last two in the order they were briefed.

### 1. *Proof of Actual Injury Is Required—From* Carey *Forward*

To determine whether there was evidence to support a finding of damages for emotional distress, it is necessary to first discuss the type of evidence required under 42 U.S.C. Section 1983 (1970) for emotional distress caused by deprivation of a constitutional right. *Carey* determined that a plaintiff claiming emotional distress caused by deprivation of his constitutional rights under Section 1983 must prove actual damages. The fact finder may not presume damages for constitutional violations. The Supreme Court in that case held that common law of torts provides "the appropriate starting point," 435 U.S. at 258, 98 S.Ct. at 1049, for resolving damage questions. The Court foresaw no difficulty in producing evidence of emotional distress actually caused by the denial of due process, the constitutional claim in *Carey*. It said, "Distress is a personal injury familiar to the law, customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff." *Id.* at 263–64, 98 S.Ct. at 1052–53. The Court continued that "although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983," neither the likelihood of such inju-

ry nor the difficulty of proving it justifies an award of compensatory damages "without proof that such injury actually was caused." *Id.* at 264, 98 S.Ct. at 1052. Finally, the Court determined that even in the absence of proof of actual injury, nominal damages, punitive damages, and attorney fees may be available for deprivation of procedural due process. *Id.* at 257 n. 11, 267, 98 S.Ct. at 1049 n. 11, 1054.

Although *Carey* limited its holding to procedural due process claims, the Supreme Court in *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), addressed the relationship between *Carey*'s actual injury requirement and substantive constitutional violations. The Court rejected the plaintiff's attempt to limit *Carey* to procedural due process claims, concluding that nothing in *Carey* established a two-tiered system. Thus, it appears that *Carey*'s actual injury requirement applies in any suit for constitutional violations.

In *Stachura*, an action brought by a tenured seventh-grade teacher who was suspended after a number of parents complained of teaching methods, the trial court instructed the jury that in addition to punitive damages it could award two types of compensatory damages: one based on the plaintiff's actual injury according to tort principles, the other based on the value or importance of the constitutional rights violated. The Supreme Court reversed. It held that, in light of the compensatory purpose of the damage award, the instruction allowing an award based on the abstract or inherent value of a constitutional right was fatally defective. Since compensatory damages are "damages grounded in determinations of plaintiffs' actual losses," *id.*, 477 U.S. at 307, 106 S.Ct. at 2543, the jury may not permissibly award damages without making those determinations. Allowing damages to be predicated on inferences or presumptions of harm, without proof of that harm, violates the spirit of the principle of compensation for harm to constitutional rights. The Court noted that presumed damages are a *substitute* for compensatory damages, to be given when a

plaintiff seeks damages for an injury that is likely to have occurred but difficult to establish, and not a *supplement* for compensatory damages. *Id.* at 310, 106 S.Ct. at 310.

In this case, plaintiff could have testified to any emotional distress the unlawful termination caused. The fact finder would not have had to presume damages, since "[d]istress is a personal injury familiar to the law." *Carey,* 435 U.S. at 263, 98 S.Ct. at 1052. Plaintiff did not, however, offer any such proof.

At least one commentator believes that *Carey*'s actual injury requirement should not apply to certain types of constitutional claims, most notably first amendment claims. S. Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983* § 4.02 (2d ed. 1986). Nahmod argues the first amendment is closely tied to the right of representative government and the right of self-expression, and as such may be analogized to the right to vote. Under *Carey,* damages may possibly be presumed for denials of voting rights, because of the difficulty of proving actual damages. *See* 435 U.S. at 264 n. 22, 98 S.Ct. at 1053 n. 22. The language in *Stachura,* however, seems to continue the requirement of proof of actual damages for first amendment cases. Until the Supreme Court holds otherwise, allowing damages to be presumed in first amendment cases is impermissible.

According to Nahmod, *Carey* intimated that there may be a difference between "presumed" and "inferred" damages. Damages may possibly be inferred in cases involving racial discrimination and fourth amendment violations. Nahmod, *supra,* § 4.02, at 199. The Court has not, however, definitively answered this question. Even if damages may be inferred in certain types of cases, this case is not an appropriate one for inferred damages. Employment termination does not fall within the ambit of the types of rights sought to be protected in race discrimination or fourth amendment violation cases, where direct testimony of the damages may not be available, yet the damages are of such a nature that the fact finder may readily infer them.

Further, as noted above, plaintiff could have produced evidence of any emotional distress he may have suffered.

A discussion of other cases involving the requisite proof for emotional distress is useful. In *Parrish v. Johnson,* 800 F.2d 600 (6th Cir.1986), the court, following *Stachura,* held that it may be appropriate to presume general damages from some constitutional violations. On remand, however, the court cautioned the district court that the plaintiff in that case could not recover any damages for the inherent value of his first amendment rights violations. Instead, the district court should determine whether the defendant's action in interfering with the plaintiff's mail and phone calls caused the plaintiff any "pain, suffering, emotional distress, or impairment of employment prospects." *Parrish v. Johnson,* 800 F.2d at 607.

Other circuits have used the same approach. In *Busche v. Burkee,* 649 F.2d 509 (7th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), a civil rights action for termination of employment prior to hearing, the court held that lack of medical or psychiatric expert testimony was not fatal, although it would strengthen the claim of emotional injury. The court noted that, although it is essentially subjective, mental suffering or emotional anguish may be evidenced by one's conduct and observed by others. *Id.* at 519 n. 12. In that case the plaintiff, following termination, became severely depressed, changed his drinking habits, became moody and quarrelsome, had marital difficulties that eventually ended in divorce, and had financial difficulties due to loss of income. The court held the evidence sufficiently supported an award of $10,000.

In *Whitley v. Seibel,* 676 F.2d 245 (7th Cir.), *cert. denied,* 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982), a false arrest civil rights case, the court held that an award of $60,000 was not excessive where the plaintiff was imprisoned for 113 days, suffered nightmares, insomnia, and nausea, and was a changed man, given to depression, vagueness, and tears. The plaintiff himself and others testified about this be-

havior. *Id.* at 252. The court held expert testimony was not essential.

In the first amendment context, at least one court, *see Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982), has held that, although mental and emotional distress caused by denial of first amendment rights is compensable, an award of damages for such injury will not stand without proof that such injury actually was caused. In that case, the only evidence was one plaintiff's testimony that on learning he was terminated he was "very depressed"; another plaintiff's statement that at one point subsequent to leaving her job she was "a little despondent and [lacking] motivation"; and the third plaintiff's testimony, on being asked whether he looked for employment after losing his job, "Well, I didn't work for six weeks, I was completely humiliated, and I stayed close to home." *Id.* at 1172. The court held this evidence insufficient proof of compensable mental or emotional injury.

Likewise, the sixth circuit reversed awards of $2500 for emotional distress to each plaintiff in a procedural due process violation case. In *Davis v. Mansfield Metropolitan Housing Authority,* 751 F.2d 180 (6th Cir.1984), the defendant wrongfully denied one plaintiff's application for a federal housing project, and wrongfully terminated another from participation in the project. One plaintiff testified she felt "kind of angry" when defendant denied her application for housing. *Id.* at 186. The court found this testimony insufficient.

In another first amendment case, the court in *Brule v. Southworth,* 611 F.2d 406 (1st Cir.1979), upheld awards of $1000 to each plaintiff. The plaintiffs were correctional facility employees who were suspended in violation of their first amendment rights. The court found the evidence sufficient to support the awards where plaintiffs "testified at some length," *id.* at 411, of their emotional distress. The evidence included sleeplessness, nervousness, irritability, embarrassment, anguish, and the changed attitudes of the plaintiffs' coworkers toward them.

My own research turns up few cases which suggest that it may be possible, in an appropriate case, to infer infliction of emotional distress from circumstances of the violation. In *Seaton v. Sky Realty Co.,* 491 F.2d 634 (7th Cir.1974), the plaintiffs, who are black, were awarded compensatory and punitive damages against a real estate broker, its manager, and one of its salesmen, for a racially motivated refusal to negotiate for the sale of a dwelling in a predominantly white area of Chicago. In this pre-*Carey* case, the seventh circuit, rejecting the defendant's position that unless there is evidence of economic or financial loss, or medical evidence of mental or emotional impairment, there can be no award of compensatory damages, concluded that compensatory damages under 42 U.S.C. Section 1982 (1970) and "actual damages" under 42 U.S.C. Section 3612 (1970) are appropriate for humiliation caused by the type of violation of rights established in that case. The court said, "Humiliation can be inferred from the circumstances as well as established by the testimony." *Id.* at 636.

It does not appear that *Seaton* would lend support for the position taken by the other members of the panel that damages for emotional distress may be inferred without proof of actual damages. First, Mr. Seaton was subjected to a racial indignity which is one of the relics of slavery that Section 1982 was enacted to eradicate. Second, an inference of humiliation was not necessary to establish damages; Mr. Seaton testified that he was humiliated "not only as a person but as a man. He stripped me of my right as a father to my kids." *Id.* at 636. Distinguishing *Seaton,* the *Nekolny* court, relying on *Carey,* held that a single statement was not adequate to establish injury.

*Bell v. Little Axe Independent School District,* 766 F.2d 1391 (10th Cir.1985), also held that damages may be presumed in first amendment cases, which it analogized to voting rights cases. However, this holding seems doubtful after *Stachura.* *See* Nahmod, *supra,* § 4.02, at 198; § 4.06, at 225.

## 2. *Sufficiency of the Evidence*

The problem in the case before us is that there was no evidence of emotional distress or evidence of facts and circumstances from which it could be inferred. One member of the panel noted that plaintiff's testimony on emotional distress may be weak and thus fall at the low end of the scale of proof required to support a finding. I submit that it does not exist. The thrust of plaintiff's damages was an economic loss. Not only did plaintiff offer no evidence of emotional distress, the subject did not come up. Nor did he bring other witnesses to describe any changes in his behavior following the termination.

Citation to plaintiff's inability, after leaving the university, to obtain another permanent teaching position due to the circumstances surrounding his termination has been offered as evidence of emotional distress. Based on such, it is said that injury to plaintiff's self-image as a professional teacher and to his ability to retain other gainful employment may be inferred. I disagree for two reasons. First, this conclusion runs counter to the holdings of *Carey* and *Stachura* that damages for violation of constitutional rights may not be presumed and that actual damages must be established. Second, the record shows that plaintiff obtained another job teaching at Fisk University beginning in September 1976, and left that job after a few months for reasons unrelated to any actions by defendants. Plaintiff was simply unable to get along with the Fisk University administration.

Testimony by plaintiff that his eventual divorce from his wife and the resulting separation from his family were caused by his inability to support his family, which, in turn, resulted from the manner in which he lost his job with the university, also fails to establish emotional distress. I agree with defendants that neither plaintiff's divorce, nor any inferred emotional distress associated with that event, can reasonably be considered a consequence of the employment termination. First, the divorce took place in 1980, nearly six years after plaintiff left the university (four years after leaving Fisk University). Second, by his own testimony plaintiff attributed the divorce not to the circumstances surrounding the termination, but rather to his financial condition. When asked on direct examination why he was divorced in 1980 and whether it was related to his termination from the university in 1975, plaintiff responded, "Well, my lack of ability to support my family and the intense pressure that this put my family under and living in poverty the way we did. I think it has affected me, yes ... has affected that." Plaintiff is talking about the effects of his lost income. The trial court, by refusing to adopt plaintiff's finding on lost income, found against him on that issue. *See Padilla v. Lawrence*, 101 N.M. 556, 563, 685 P.2d 964, 971 (Ct.App.1984).

I do not believe that this testimony meets the requirements of *Carey* and *Stachura* that there must be proof of actual injury. When compared with the cases discussed above, such as *Brule* and *Busche*, the evidence here does not even come close, qualitatively or quantitatively.

The reliance on *Restatement (Second) of Torts* Section 912 (1979) for the proposition that the trier of fact can properly award substantial damages as compensation for harms that normally flow from a tortious injury without specific proof of their existence neither correctly states the *Restatement* nor comports with the teachings of *Carey* and *Stachura*. Section 912 provides:

> One to whom another has tortiously caused harm is entitled to compensatory damages for the harm if, but only if, he establishes by proof the extent of the harm and the amount of money representing adequate compensation with as much certainty as the nature of the tort and the circumstances permit.

My reading of that section suggests that it deals only with the certainty of damages, not the essential elements that a plaintiff must prove to establish the damages. The problem in the case before us is not a lack of certainty as to the extent of damages; rather, it is the lack of proof of any damages at all.

Further, to simply conclude that the involuntary loss of a job would cause emotional distress, without proof of how such distress was manifested, simply ignores *Carey* and *Stachura.*

### 3. *Lack of Medical Expert Evidence to Support Damage Award*

I agree that, while medical or similar type expert testimony would strengthen a claim for emotional injury, it is not essential to prove a claim for emotional distress. *See Busche v. Burkee; Whitley v. Seibel.*

### 4. *Causation*

Defendants argue that if we hold that plaintiff suffered emotional distress, nevertheless, there was no evidence that such was the result of the wrongful deprivation of his constitutional rights as opposed to a lawful termination. They cite *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724 (5th Cir.1982), wherein the plaintiff was able to recover damages only for the procedural violation which preceded his otherwise lawful firing. There are two answers adverse to defendants' position. First, under my analysis, this sub-issue need not be reached because I would hold that plaintiff is entitled to no more than nominal damages. Second, defendants ignore the fact that the violation of the constitutional right and the termination were inseparably connected, since the termination here, unlike the termination on *Laje,* was unlawful. To accept defendants' argument, we would have to find that the termination was lawful; that position has been correctly rejected.

CONCLUSION

For the reasons stated, I respectfully dissent on the issue of damages, and would remand with instructions to award plaintiff nominal damages of $1.00 plus his attorney fees. *See Carey v. Piphus,* 435 U.S. at 257 n. 11, 98 S.Ct. at 1049 n. 11 (potential liability of Section 1983 defendants for attorney fees provides assurance that state agents will not ignore due process rights); *Basiardanes v. City of Galveston,* 682 F.2d 1203 (5th Cir.1982) (nominal damages held to justify imposition of attorney fees

and costs even though plaintiff fails to prove actual injury necessary to sustain an award of compensatory damages); *Lamar v. Steele,* 693 F.2d 559 (5th Cir.1982), *cert. denied,* 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983) (same).

HARTZ, Judge (specially concurring).

I concur in the result and join in Judge Apodaca's opinion except for the discussion of damages.

Before stating where I disagree with the other members of the panel regarding damages, I should note that we agree on a number of matters. First, federal law "governs the determination of damages" in actions under 42 U.S.C. Section 1983 (1982), *Busche v. Burkee,* 649 F.2d 509, 518 (7th Cir.1981), although federal law may draw from state sources. *See Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); 42 U.S.C. § 1988 (1982). Second, damages for emotional distress may be awarded under Section 1983 even without proof of physical injury. *See Stallworth v. Shuler,* 777 F.2d 1431, 1435 (11th Cir.1985); *Williams v. Board of Regents of Univ. Sys. of Ga.,* 629 F.2d 993 (5th Cir.1980), *cert. denied,* 452 U.S. 926, 101 S.Ct. 3063, 69 L.Ed.2d 428 (1981); *Brule v. Southworth,* 611 F.2d 406 (1st Cir.1979); *Donovan v. Reinbold,* 433 F.2d 738 (9th Cir.1970); *James v. Board of School Comm'rs of Mobile County, Ala.,* 484 F.Supp. 705, 714 (S.D.Ala.1979). Third, emotional distress can be established without expert testimony. Fourth, one whose first amendment rights have been violated is not entitled to damages measured by the abstract value or importance of the first amendment, because such damages are not compensatory. *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 309 n. 13, 106 S.Ct. 2537, 2544 n. 13, 91 L.Ed.2d 249 (1986). Fifth, defendants have not challenged the *size* of the award for emotional distress.

The issue that divides us is whether there was sufficient evidence at trial to support the district court's finding of emotional distress. I agree with Judge Bivins that Jacobs provided no direct evidence of

emotional distress caused by defendants' violation of his constitutional rights; that is, no one testified that Jacobs suffered, or appeared to suffer, such distress. Jacobs' only testimony concerning emotional distress, which is quoted by Judge Bivins, concerned distress caused by loss of income. Yet, the district court denied Jacobs' proposed finding that defendants caused him loss of income. Thus, the second link is missing in the chain of causation from (1) defendants' violation of Jacobs' rights, to (2) Jacobs' loss of income caused by that violation, to (3) Jacobs' distress from lost income. The only emotional distress for which Jacobs can recover is distress flowing directly from the refusal to rehire him.

Judge Bivins believes that *Stachura* and *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) hold that Jacobs cannot recover for emotional distress under Section 1983 in the absence of direct testimony of that distress by Jacobs or an observer (such as a spouse or psychiatrist). I respectfully disagree.

*Stachura* did not address the type of proof necessary to prove damages. It held only that noncompensatory damages are not recoverable under Section 1983. The Supreme Court reversed an award of damages that was based on a perceived value of the first amendment rather than on injury to the plaintiff.

*Carey,* on the other hand, addressed the question of proof. The plaintiffs had been suspended from school without being afforded a hearing. Both parties, and the Court, agreed that the plaintiffs could not recover damages for injuries caused by the suspension if they " 'would have been suspended even if a proper hearing had been held.' " *Id.* at 260, 98 S.Ct. at 1050 (quoting Court of Appeals opinion in *Piphus v. Carey,* 545 F.2d 30, 32 (7th Cir.1976)). The issue was whether the plaintiffs could recover for the violation of procedural due process in itself. The plaintiffs contended that they could recover under Section 1983 for denial of procedural due process without having to prove damages. They argued: (1) Damages should be awarded for

deprivation of a constitutional right regardless of whether the deprived person suffered any injury, and (2) Every deprivation of procedural due process should be presumed to cause some injury. 435 U.S. at 254, 98 S.Ct. at 1047. In response to the first argument, the Court held, as it did later in *Stachura,* that only compensatory damages are awardable under Section 1983. *Id.* at 255–57, 98 S.Ct. at 1047–49.

As for the second argument, the Court disagreed with the plaintiffs' claim that "deprivation of protected interests without procedural due process, even where the premise for the deprivation is not erroneous, inevitably arouses strong feelings of mental and emotional distress...." *Id.* at 261, 98 S.Ct. at 1051. The Court held that the plaintiffs should be "put to their proof on the issue." *Id.* at 262, 98 S.Ct. at 1051. In explaining why the rationale for presumed damages for defamation *per se* was not applicable to a violation of procedural due process, the Court wrote:

First, it is not reasonable to assume that every departure from procedural due process, no matter what the circumstances or how minor, inherently is as likely to cause distress as the publication of defamation *per se* is to cause injury to reputation and distress. Where the deprivation of a protected interest is substantively justified but procedures are deficient in some respect, there may well be those who suffer no distress over the procedural irregularities. Indeed, in contrast to the immediately distressing effect of defamation *per se,* a person may not even know that procedures *were* deficient until he enlists the aid of counsel to challenge a perceived substantive deprivation.

Moreover, where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. But as the Court of Appeals held, the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983. This ambiguity in causation, which is absent in the case of defamation *per se,* provides additional

need for requiring the plaintiff to convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself. [Emphasis in original; footnote omitted.]

*Id.* at 263, 98 S.Ct. at 1052. Then, after pointing out that "[d]istress is a personal injury familiar to the law," *id.*, and should not pose any particular problems of proof, the Court concluded:

[A]lthough mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.

*Id.* at 264, 98 S.Ct. at 1052.

I read the Court's approach in *Carey* as follows: First, the Court employed analysis that any court might employ under the common law to determine whether the nature of the wrong itself—deprivation of procedural due process—was such as to justify a presumption that emotional distress would result from the infliction. The Court found that the likelihood of emotional distress was too small to justify a presumption. Then, perhaps to allay concern that absence of a presumption would result in inability to recover for the constitutional wrong, the Court noted that proof of actual injury should be readily available. I do not read *Carey* as imposing in Section 1983 cases any requirements for proof of damages that are stricter than common law principles would demand. On the contrary, the heart of the opinion's analysis was that the common law of torts should be the starting point in "defining the elements of damages and the prerequisites for their recovery" under Section 1983. *Id.* at 257–58, 98 S.Ct. at 1048–50. The holding of *Carey* was that there is no need in procedural due process cases to *ease* traditional requirements of proof, not that particularly strict requirements are necessary.

Moreover, the *Carey* holding that damages would not be presumed was limited to violations of procedural due process. The Court cautioned that "the elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another." *Id.* at 264–65, 98 S.Ct. at 1052–53.

The circumstances of this case are sufficiently different from *Carey* to require an independent analysis. Unlike in *Carey*, there is an undoubted substantive deprivation from the constitutional violation—Jacobs lost his job. The above-quoted discussion from *Carey* regarding the problems with inferring distress from a violation of procedural due process is inapposite for two reasons. First, it *is* reasonable to infer that one who involuntarily loses a long-term job will suffer distress. Second, in this case one need not distinguish between distress felt from violation of one's rights and distress felt from loss of one's job, because distress from either cause is recoverable; we have affirmed the district court's decision that Jacobs lost his job because of defendants' violation of his constitutional rights.

Moreover, we have specific information about Jacobs that suggests how he would react to loss of his job. One reasonably could infer from the record that Jacobs labored vigorously to change the university that he hoped to make his home into an institution that met his standards. It is hardly unreasonable to conclude, as the district court apparently did, that he would be profoundly distressed at losing that hope because of those very efforts, particularly when the reasons given for the failure to rehire him were pretextual.

A leading treatise on evidence recognizes that one can draw inferences about a person's mental state from the surrounding circumstances. The treatise states the general principle that "[t]he modes of inference circumstantially to a human quality or condition [include] (a) [f]rom circumstances tending to excite, stimulate, or bring the emotion in question into play[.]" 2 J. Wigmore, *Evidence* § 387, at 416 (Chadbourn rev. 1979). The treatise expounds on the matter:

The general inquiry is, *What circumstances tend probably to excite a given emotion?*

Obviously, the whole range of human affairs is involved. It would be idle to attempt to catalog the various facts of human life with reference to their potency to excite a given emotion. Such an attempt would exhibit two defects. It would be pedantic, because it is impossible to suppose that the operation of human emotions can be reduced to fixed rules, and that a given fact can have an unvarying quantity of emotional potency. It would be useless, because the emotional effect of any fact must depend so often on the surrounding circumstances that no general formula could provide for the infinite combinations of circumstances. Courts have therefore always been agreed that in general no fixed negative rules can be made; that no circumstance can be said beforehand to be without the power of exciting a given emotion; and that, in general, *any fact may be offered* which by possibility can be conceived as *tending with others towards the emotion* in question[.] [Emphasis in original.]

*Id.,* § 389, at 416–17. *See* 1A J. Wigmore, *Evidence* § 190, at 1855 (Tillers rev. 1983).

Of course, there is a distinction between the *admissibility* of evidence and its *sufficiency.* Evidence of surrounding circumstances, even though admissible, may not be sufficient to support a finding that a particular mental state was caused by those circumstances. For example, the treatise notes that to sustain a finding of insanity, proof of circumstances calculated to induce insanity is not enough; there must also be evidence of a diseased mental condition. 2 J. Wigmore, *supra,* § 231, at 21. This rule with respect to proof of insanity, however, is merely a matter of common observation. Most people do not go insane under stress. Although the existence of certain circumstances may provide additional support for the conclusion that an individual went insane, those circumstances alone would not be enough to establish a probability that the individual in fact went insane.

On the other hand, often one could conclude from the circumstances that an individual probably experienced distress. Juries draw such conclusions all the time with respect to pain and suffering. A conscious person trapped in a burning building is bound to suffer. Someone who believes that he and his spouse are about to die in a plane crash will surely experience anguish concerning his own situation and the prospect that his children will become orphans. *See Solomon v. Warren,* 540 F.2d 777, 792 (5th Cir.1976), *cert. dismissed,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977).

In discussing proof of harm to body, feelings or reputation, the *Restatement (Second) of Torts* Section 912 comment b (1979) recognizes that proof of distress may be purely circumstantial, stating:

> In these cases the trier of fact can properly award substantial damages as compensation for harms that normally flow from the tortious injury even without specific proof of their existence, such as pain from a blow or humiliation from a scar. Evidence to prove that the harm is greater or less than that which ordinarily follows is admissible.

This statement accords with the general rule that circumstantial evidence can be sufficient to prove a fact. *See* SCRA 1986, 13–308 (Uniform Jury Instruction stating, "A fact may be proved by circumstantial evidence."). Also, although I have not found a Section 1983 case in which a court has stated explicitly that circumstantial proof of distress is adequate, at least two reported opinions, *Williams v. Board of Regents of Univ. Sys. of Ga.,* 629 F.2d at 1005 and *Donovan v. Reinbold,* 433 F.2d at 743, have affirmed awards of emotional distress without concerning themselves with whether there has been direct testimony of the distress. *See Sykes v. McDowell,* 786 F.2d 1098, 1105 (11th Cir.1986) ("In a small community 'where each resident knows the neighbors,' the humiliation of a public firing is evident," [quoting *Baskin v. Parker,* 602 F.2d 1205, 1210 (5th Cir.1979) ("real injury could be inferred from the facts")]. *Cf. Carey v. Piphus,* 435 U.S. at 264 n. 22, 98 S.Ct. at 1053 n. 22 (quoting

*Seaton v. Sky Realty Co.*, 491 F.2d 634, 636 (7th Cir.1974) that " '[h]umiliation can be inferred from the circumstances as well as established by the testimony' ").

Finally, although the fact finder may infer from the failure of a plaintiff to testify as to his emotional distress that the plaintiff's distress was slight or nonexistent, I see no reason to compel such an inference. Plaintiff's counsel may decide that the claims can be presented more effectively through circumstantial evidence ("People turn their heads when they see the scar on my face."), particularly since direct testimony may be discounted by the jury as histrionics. Or, as here, the fact finder may decide the case on unexpected grounds; Jacobs' counsel probably thought that any damage award would include loss of income. Competent counsel may not anticipate every decision of the fact finder. Courts should not impose an artificial penalty in such circumstances.