13 P.3d 960

2000-NMCA-099

Robert SANCHEZ and Eleanor Sanchez, husband and wife, R & E Sanchez Family Third Limited Partnership, and R & E Sanchez Fourth Family Limited Partnership, Plaintiffs/Appellees/Cross–Appellants,

v.

Richard B. SAYLOR and Susan J. Saylor, a/k/a Susan J. Scarborough, husband and wife, Defendants/Appellants/Cross–Appellees,

v.

Coors Ltd., R.R.G., Additional Defendant/Counterclaimant/Appellant/Cross–Appellee.

No. 19,470.

Court of Appeals of New Mexico.

Aug. 1, 2000.

Certiorari Denied, No. 26,616, Nov. 9, 2000.

Esteban Aguilar, Aguilar Law Offices, P.C., Albuquerque, NM, Elizabeth Losee, Law Office of Elizabeth Losee, Corrales, NM, for Appellees/Cross–Appellants.

Victor R. Marshall, Victor R. Marshall & Associates, P.C., Albuquerque, NM, for Appellants/Cross–Appellees.

## OPINION

SUTIN, Judge.

{1}  This case involves business and court battles between business partners Robert Sanchez and Robert Saylor. Both appeal. We get the flavor of the case in the court's opening finding of fact:

> The above-captioned cause involves two partners, both energetic, dynamic, intelligent businessmen, entrepreneurs and risk-takers. They amassed a multi-million dollar investment portfolio through a relationship which contained virtually no formal agreements or legal documents. Rather, these partners conducted their affairs through the use of informal luncheons and late-night telephone conversations. Their

conduct was governed by their respective assumptions and personal financial objectives. The Court enters this background because ... the testimony of both Dr. Sanchez and Mr. Saylor is, at best, self-serving, speculative and vague. Neither intentionally misrepresents the truth; however, both partners can only see the issues before the Court from a disturbingly myopic point of view.

{2} The two limited partnerships at issue in this lawsuit were Fidelity Limited, R.S.R.S. (RSRS), and Coors, Ltd., R.R.G. (Coors). Saylor appeals the court's determination that he converted partnership promissory notes worth $500,000 and therefore owed Sanchez $250,000. Sanchez cross-appeals the court's fee and expense reimbursement award of $351,739 in favor of Saylor and against Coors; the court's award of $522,488 in favor of Coors and against Sanchez for breaches of contract and fiduciary duty; and the court's refusal to award Sanchez damages in the form of profits derived by Saylor from Saylor's conversion of partnership notes. On the Saylor appeal, we affirm the judgment in favor of Sanchez against Saylor. On the Sanchez cross-appeal, we reverse the judgment of $522,488 in favor of Coors against Sanchez, and we affirm the judgment of $351,739 in favor of Saylor against Coors.

## FACTS AND PROCEEDINGS

{3} Sanchez and his wife sued Saylor and his wife. The Saylors counterclaimed. The wives were ultimately dismissed. Neither RSRS nor Coors were named parties. Two family limited partnerships into which certain of the Sanchez assets were placed, the R & E Sanchez Third Family Limited Partnership and the R & E Sanchez Fourth Limited Partnership, were added as plaintiffs. We refer to Sanchez and his family limited partnerships as "Sanchez."

{4} Sanchez and Saylor were the general partners of RSRS, which was formed to purchase the Fidelity Square Shopping Center (the shopping center). RSRS sold the shopping center to Fidelity Square Limited (Fidelity–Arizona), an Arizona Limited Partnership, and received two unguaranteed promissory notes secured by a mortgage as partial consideration for the sale. Fidelity–Arizona defaulted on the notes. In a refinancing, Fidelity–Arizona received funds from Golddome Credit Corporation (Golddome), and RSRS subordinated its mortgage to a Golddome first mortgage. Fidelity–Arizona then defaulted on its obligations to RSRS and Golddome. After RSRS filed a foreclosure action, Fidelity–Arizona filed bankruptcy in Arizona.

{5} The primary issue in Sanchez's appeal arises out of Saylor's purchase on his own behalf of the shopping center out of the bankruptcy by using, as partial consideration, the release and forgiveness of the RSRS promissory notes. The court held Saylor liable in conversion.

{6} Sanchez and Saylor also were the general partners in Coors. Saylor managed this partnership, which owned commercial rental property (the Coors property). The primary issues in Saylor's appeal arise out of services rendered and funds advanced for the benefit of Coors for which Saylor felt entitled to be reimbursed or paid, and the loss by Coors of a financially beneficial refinancing opportunity due to Sanchez's refusal to provide his financial statements to the prospective lender.

{7} Interwoven into these partners' relationships were Sanchez's personal financial difficulties. Sanchez did not join Saylor in buying the shopping center out of bankruptcy, due primarily to a United New Mexico Bank (United) judgment against Sanchez for $2,364,533 and United's collection efforts which included a fraudulent-conveyance action against Sanchez. Sanchez feared that United ultimately might levy against the shopping center. This affected his relief below. The court denied Sanchez any profits derived from Saylor's conversion of the RSRS notes because of Sanchez's "own unclean hands in attempting to deceive United," and the court refused to impose a constructive trust on the shopping center in Sanchez's favor, because "to do so would ... consummate the attempt to defraud United...."

{8} In addition, Sanchez refused to provide personal financial statements to obtain a

refinancing for Coors because Sanchez feared that United would discover them and seek execution against his assets. The court found this refusal to be part of Sanchez's "ongoing efforts to deceive his creditors about his assets."

{9} Other threads of Sanchez's inappropriate conduct running through the partnership fabric are noted in findings that his "refusal to provide his personal financial statements [for the Coors refinance] was tortious, intentional, willful, and in bad faith"; that he repeatedly failed to inform himself about the affairs of Coors; that he failed and refused to contribute funds needed by Coors; and that he failed and refused to bear the risks and losses of the partnership while he demanded profits. The court concluded that this conduct constituted breaches by Sanchez of his fiduciary duties to Coors.

{10} After several days of trial, the court entered a Final Order and Judgment (the judgment). After post-judgment motions, the court entered an order joining Coors, as a defendant and counterclaimant (the order), and an amended final order and judgment (the amended judgment). With this summary backdrop, we address the issues.

## DISCUSSION

### I. *Rule 12–213(A)(3) and Substantial Evidence Arguments*

{11} Each party accuses the other of failing to adhere to Rule 12–213(A)(3) NMRA 2000, requiring an appellant to set out the substance of the evidence bearing upon a crucial proposition. We deny Saylor's motion to dismiss Sanchez's entire cross-appeal for failure to comply with that rule because the entire cross-appeal does not suffer from a failure to comply. However, as will be seen, we do decline to entertain certain issues for failure to comply with Rule 12–213(A).

{12} We reiterate the standards of review:

If there is substantial evidence to support the trial court's decision, we will not disturb that decision on appeal. Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion. In reviewing a claim

that the trial court's decision was not supported by substantial evidence, the appellate court views the evidence in the light most favorable to the decision below, resolving all conflicts in the evidence in favor of that decision and disregarding evidence to the contrary. We will reverse only when the evidence, or reasonable inferences from the evidence, cannot support the trial court's findings and conclusions.

*Insure New Mexico, LLC v. Robert McGonigle,* 2000–NMCA–018, ¶ 8, 128 N.M. 611, 995 P.2d 1053 (internal quotation marks and citations omitted). We indulge every presumption in favor of the correctness of the findings, conclusions, and judgment of the district court. *See Esquibel v. Hallmark,* 92 N.M. 254, 256, 586 P.2d 1083, 1085 (1978). When we review a substantial evidence claim, "[t]he question is not whether substantial evidence would have supported an opposite result; it is whether [the] evidence supports the result reached." *Hernandez v. Mead Foods, Inc.,* 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct.App.1986). There may be other facts that, if believed, might support a different result, but we disregard them. *See Salter v. Jameson,* 105 N.M. 711, 713, 736 P.2d 989, 991 (Ct.App.1987). "It is for the trial court to weigh the testimony, determine the credibility of witnesses, reconcile inconsistent statements, and determine where the truth lies." *Lopez v. Adams,* 116 N.M. 757, 758, 867 P.2d 427, 428 (Ct.App.1993). "The appellate court may not reweigh the evidence [or] substitute its judgment for that of the trier of fact." *Sanchez v. Homestake Mining Co.,* 102 N.M. 473, 476, 697 P.2d 156, 159 (Ct.App.1985) (citation omitted). If a finding is made against the party with the burden of proof, we can affirm if it was rational for the district court to disbelieve the evidence offered by that party. *See Sosa v. Empire Roofing* Co., 110 N.M. 614, 616, 798 P.2d 215, 217 (Ct.App.1990). Applying these standards of review in the case before us, we determine that substantial evidence supports the district court's findings of fact and conclusions of law in all instances in which lack of substantial evidence was argued by either party in this appeal.

## II. *Saylor's Appeal*

{13} Saylor appeals from an adverse judgment holding him liable in conversion and awarding $250,000 to Sanchez. He attacks the sufficiency of the evidence and contends that the bankruptcy sale approval by the federal court ended any question of the propriety of his purchase.

### A. *Substantial Evidence Exists to Support a $500,000 Value*

{14} Saylor argues that the court erred in finding the value of the partnership promissory notes to be $500,000. He points to evidence that supports his view that the notes were worthless. But other evidence exists to support the district court's determination of value. The shopping center had been appraised at $1,600,000, and the cash paid by Fidelity–Arizona was only $1,150,000. The consideration for the sale to Saylor included RSRS's forgiving and releasing the notes, without which Fidelity–Arizona would not have sold the property to Saylor. The balance of the notes, including interest, was $500,000. Saylor paid $1,150,000 for the property, listed the property for sale at $1,950,000, and then sold the property. Although the sale price was sealed, Saylor must have profited from the purchase and sale because Sanchez sued to recover those profits and we do not see anything in the record indicating that Saylor denied receiving a profit.

{15} Representatives of the two corporate general partners of Fidelity–Arizona supported the court's finding of value. One testified, "In effect, we [Fidelity–Arizona] actually got the million, six because the indebtedness of the second mortgage combined with the million, one-fifty was close to that amount ... so by selling it, we really actually got that amount, or more." The other testified that Fidelity–Arizona would not have sold the property if RSRS had refused to forgive the notes, because the two corporate general partners still would have owed the $500,000, and the notes were collectable from those partners at the time they were forgiven.

{16} This is substantial evidence to support the court's finding of a $500,000 value.

The amount due, at the very least, is prima facie evidence of value. That Fidelity–Arizona required the notes to be forgiven and released as a condition of sale is a strong indication that the property owner believed the notes had some value. Saylor presented no evidence that Fidelity–Arizona held any belief to the contrary and did not show that the notes could not be collected from Fidelity–Arizona's general partners.

{17} For his contention that the amount due is nothing more than a starting point for the determination of actual value and alone cannot overcome his evidence of the uncollectability of the notes, Saylor cites several cases: *Martinez v. Eight N. Indian Pueblo Council, Inc.*, 1997–NMCA–078, ¶ 20, 123 N.M. 677, 944 P.2d 906 (Hartz, C.J., dissenting); *First Southwestern Fin. Servs. v. Pulliam*, 1996–NMCA–032, ¶ 3, 121 N.M. 436, 912 P.2d 828; *Lewis v. Lewis*, 106 N.M. 105, 112, 739 P.2d 974, 981 (Ct.App.1987); and *George v. Caton*, 93 N.M. 370, 378, 600 P.2d 822, 830 (Ct.App.1979). Although they give credence to Saylor's theory that the collectability of a note can be considered in determining the actual value of the note, none of these cases is determinative of the issues here. None is a conversion case, and none discusses the evidentiary value of the amount due under promissory notes. Furthermore, in the case before us, there exists evidence in addition to collectability that materially bears on the issue and supports the court's determination.

{18} Saylor also contends that damages cannot be awarded for the conversion of an asset in the absence of evidence that the asset had market value, citing *Security Pac. Fin. Servs. v. Signfilled Corp.*, 1998–NMCA–046, ¶¶ 15–18, 125 N.M. 38, 956 P.2d 837. The district court's decision, however, is not inconsistent with the law that Saylor argues. The court found a value of $500,000 based in part on a market transaction in which the consideration included $1,150,000 and the forgiving and release of the promissory notes. The evidence of the amount due, of collectability from the general partners of Fidelity–Arizona, of the $1,600,000 appraisal, and of Saylor's conversion and resale of the property was enough to establish market value.

The court was not persuaded by Saylor's evidence and did not err in finding the $500,000 value by a preponderance of the evidence.

### B. Saylor Was Not Entitled to Judgment on the Ground Sanchez Suffered No Damages as a Matter of Law

{19} Saylor contends that he was entitled to dismissal on the ground that Sanchez suffered no damages as a matter of law. He argues that Sanchez is pursuing an award against him for something Sanchez never would or could have pursued against Fidelity–Arizona and its general partners.

{20} Saylor relies heavily on *First National Bank v. Garrett*, 80 N.M. 239, 240–41, 453 P.2d 759, 760–61 (1969) (a first mortgagee's bid to purchase in an amount less than its full judgment can be credited against its judgment instead of cash changing hands and a second mortgagee cannot complain). He cites *Garrett* for the point that junior lienholders are not prejudiced when a first mortgagee bids its judgment with a resulting deficiency, unless the junior lienholders can show that the bid price was inadequate or that the sale was unfair. Saylor argues that Sanchez suffered no damages as a result of the bankruptcy sale for $1,150,000 because that amount only partially satisfied the first mortgage debt of $1,922,000 to Golddome and because the bid price and any deficiency to which Golddome would have been entitled far exceeded the value of the property.

{21} Saylor also points to 1993 Sanchez deposition testimony that RSRS's interest in Fidelity–Arizona was worthless, that RSRS was defunct, and that pursuit of the notes would be an utter waste of money, even if RSRS were solvent. Saylor mentions that he and Sanchez did discuss the possibility of pursuing the corporate general partners of Fidelity–Arizona but decided against it because it was "good money after bad."

{22} Saylor's contentions are directed to the sufficiency of the evidence, although he argues them as questions of law. Sanchez presented evidence that the Fidelity–Arizona general partners wanted the notes forgiven in the sale because the notes had value and may have been collectible from them. This was sufficient evidence of value and collectability to support the court's determinations, and arguments to the contrary are arguments directed to the weight of the evidence or credibility, which are for the finder of fact. Without a record of undisputed fact or findings to the contrary, we will not speculate about possible collection, foreclosure, or bankruptcy. Substantial evidence exists to support the court's determination of value.

{23} Saylor nevertheless argues that conflicting findings of the court require a determination of uncollectability as a matter of law. We do not accept Saylor's invitation that we take the district court's place as weigher of facts and judge of credibility. The underlying historical facts are sufficient to support the court's finding of a $500,000 value. Having made that determination we need not consider evidence favorable to Saylor, even if found in findings of fact. *See Hernandez*, 104 N.M. at 72, 716 P.2d at 650. Furthermore, we indulge every presumption in favor of upholding the court's judgment when faced with uncertain, inconsistent, doubtful, or ambiguous findings. *See Ledbetter v. Webb*, 103 N.M. 597, 602, 711 P.2d 874, 879 (1985). We will resolve seeming inconsistencies, if possible, to justify the judgment based on a fair construction of the findings. *See id.* We presume that the court did not make inconsistent findings. *See Jacobs v. Meister*, 108 N.M. 488, 492, 775 P.2d 254, 258 (Ct.App.1989). We easily reconcile the court's findings with its conclusion that the notes had a $500,000 value.

### C. Sanchez Was Not Barred by the Bankruptcy Court Approval and Sale

{24} Saylor contends that the approval by the United States Bankruptcy Court of his purchase, after notice and hearing in the Fidelity–Arizona bankruptcy proceeding, is a federal judgment entitled to full faith and credit and cannot be collaterally attacked or set aside. We disagree. Sanchez has not sought to set the federal court order aside, and Sanchez's action is not a collateral attack on that judgment. *See Sanders v. Estate of Sanders*, 1996–NMCA–102, ¶ 23, 122 N.M. 468, 927 P.2d 23. While

Saylor's contention may be a correct statement of the law, it does not apply to bar Sanchez's claim for conversion.

{25} The issue of Sanchez's right to relief against Saylor for conversion was not litigated in the Fidelity–Arizona bankruptcy proceeding. Saylor has provided us with no basis, and we know of none, on which to hold that the bankruptcy sale approval is a bar to Sanchez's action to recover the value of the RSRS notes converted by Saylor.

### D. Conclusion—Saylor's Appeal

{26} We affirm the court's award of $250,000 in favor of Sanchez and against Saylor, holding that there was sufficient evidence to support a $500,000 value of the notes and that Saylor was not entitled to a dismissal on the ground that Sanchez suffered no damages as a matter of law. Further, Sanchez's conversion claim was not barred by the bankruptcy court approval and sale.

### III. Sanchez's Appeal

{27} Sanchez appeals from adverse determinations awarding Saylor $351,739 against Coors, awarding Coors $522,488 against Sanchez, and denying his claims for recovery of Saylor's profits. Sanchez argues that the court lacked jurisdiction to enter the amended judgment, and attacks the court's order adding Coors as a defendant and counterclaimant by post-trial order.

### A. The Court's Amended Judgment Should Not Be Set Aside for Lack of Jurisdiction

{28} Sanchez contends that the court lacked jurisdiction on May 21 to enter the order adding Coors as a party and to enter an amended judgment conforming the judgment to that order. We hold that the court had subject matter jurisdiction on May 21 to enter the order and the amended judgment. Sanchez makes this contention because the original judgment was entered on March 2; post-judgment Rule 1–052(B)(2) NMRA 2000 and Rule 1–059 NMRA 2000 motions were made on March 9 and March 11; neither post-judgment motion was ruled on within 30 days, making the appeal dead-line May 11; and a notice of appeal was filed on May 1. Thus, Sanchez contends that the filing of the notice of appeal divested the court of jurisdiction, citing *Luboyeski v. Hill*, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994), and that the court lost jurisdiction to do anything after 30 days had passed in any event, citing NMSA 1978, § 39–1–1 (1917).

{29} However, the critical facts that Sanchez ignores are that on March 27, well within the time of district court jurisdiction, Saylor filed a motion under Rule 1–015(B) NMRA 2000 to add Coors as a party and to conform the judgment accordingly and that this motion was granted by the court at a hearing held on April 1, again well within the time of district court jurisdiction. The issue, therefore, is whether the district court lacked jurisdiction on May 21 to enter the order and amended judgment conforming to its oral order of April 1. Our cases firmly support the notion that the court did not lack jurisdiction. *See State v. Ratchford*, 115 N.M. 567, 572, 855 P.2d 556, 561 (1993) (holding that district court's verbal grant of a motion for a new trial was effective notwithstanding that a written order embodying the verbal one was not filed within 30 days after the motion was deemed denied); *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 241, 824 P.2d 1033, 1043 (1992) (indicating that appellate courts should approach jurisdictional issues arising out of notices of appeal pragmatically, not inflexibly, and that usual rule is that district court loses jurisdiction upon the filing of a notice of appeal except for purposes of perfecting the appeal or passing on motions directed at the judgment pending at the time); *State v. Herbstman*, 1999–NMCA–014, ¶ 14, 126 N.M. 683, 974 P.2d 177 (indicating that, even in cases of lack of technical jurisdiction, where it would accomplish little and cause added expense and delay, this Court will give effect to district court orders entered during the pendency of an appeal); *Gonzales v. City of Albuquerque*, 90 N.M. 785, 786, 568 P.2d 621, 622 (Ct.App.1977) (determining that a court may not enter a *nunc pro tunc* order to supply an omitted action, and indicating that it may enter an order to formally accomplish something that was actually earlier done).

**B.** *The Court's Post–Trial Addition of Coors Was Not an Abuse of Discretion*

{30} Sanchez contends that even if jurisdiction existed to grant the motion adding Coors as a party, the district court abused its discretion in doing so. We review the district court's grant of a motion to amend for abuse of discretion. *See Bellet v. Grynberg,* 114 N.M. 690, 692, 845 P.2d 784, 786 (1992). "Granting a motion to amend is an abuse of discretion if the opposing party is prejudiced by the amendment." *Wirtz v. State Educ. Retirement Bd.,* 1996–NMCA–085, ¶ 8, 122 N.M. 292, 923 P.2d 1177 (citing *Bellet,* 114 N.M. at 692, 845 P.2d at 786). Prejudice occurs to a party that does not have a fair opportunity to defend itself or offer evidence. *See Bellet,* 114 N.M. at 692, 845 P.2d at 786.

{31} Sanchez argues several substantive points in support of his abuse of discretion contention. Because he did not expressly consent to any evidence on the issue of relief regarding Coors, he asserts that any evidence at trial that may have related to that issue was relevant to Saylor's claims against Sanchez and therefore not tried by implied consent as to Coors. Sanchez also argues that the addition of Coors a month after the judgment was entered was prejudicial, in that he did not have a fair opportunity to defend against the Coors claim, and, further, it denied Coors due process because Coors did not have a fair opportunity to defend itself. In addition, Sanchez argues prejudice because he did not have the opportunity to offer additional evidence or raise possible defenses (e.g., the statute of limitations) with respect to Saylor's claims against Coors for reimbursement of expenses. Sanchez further contends that, absent implied consent, the amendment could be granted only if no prejudice would result. *See Camp v. Bernalillo County Med. Ctr.,* 96 N.M. 611, 613–14, 633 P.2d 719, 721–23 (Ct.App.1981) (stating that district court erred in allowing amendment while excluding essential defense evidence). *See also Wirtz,* 1996–NMCA–085, ¶ 20, 122 N.M. 292, 923 P.2d 1177 (deciding that defendant added after trial has no opportunity to defend itself on the merits and

will suffer prejudice); *Bellet,* 114 N.M. at 692, 845 P.2d at 786.

{32} The law is settled that parties may try issues not raised in the pleadings when those issues are tried by express or implied consent. *See* Rule 1–015(B); *Lightsey v. Marshall,* 1999–NMCA–147, ¶ 12, 128 N.M. 353, 992 P.2d 904. By the nature of the arguments and the evidence presented to the court, the issues of partner obligations, accounting, and dissolution included the determination of obligations of partners to the partnership and vice versa. *Cf. Levy v. Disharoon,* 106 N.M. 699, 702–03, 749 P.2d 84, 87–88 (1988). The trail of court documents in this case makes it abundantly clear that Sanchez knew and understood that this action in the district court involved partnership accounting and equitable relief that necessarily involved Coors directly. Sanchez's complaint alleged that Saylor breached his fiduciary duty to Coors as well as to Sanchez and that Saylor converted Coors' assets. Sanchez sought a partnership accounting and damages for Saylor's wrongful appropriation of partnership assets or opportunities for Saylor's own use and profit.

{33} Saylor's counterclaim alleged that Sanchez breached his fiduciary duties to Coors as well as to Saylor. Saylor sought an accounting of benefits received and amounts owed by Sanchez and termination of Sanchez's interests in Coors. Sanchez acknowledged in a pretrial motion that Saylor's counterclaims sought "a general accounting and ... a judicially ordered dissolution of ... Coors ...." and that the "counterclaims are equitable in nature." In fact, the pretrial order said that Saylor was seeking a full and complete accounting of amounts due Saylor from the Coors partnership, and dissolution of Coors. A very detailed proposed accounting is attached to the pretrial order.

{34} The parties stipulated that the New Mexico Uniform Partnership Act (UPA), NMSA 1978, §§ 54–1–1 to 54–1–46 (1947, as amended through 1997) and the Uniform Limited Partnership Act (ULPA), NMSA 1978, §§ 54–2–1 to 54–2–30 (1988, as amended through 1993) governed the duties of partners *inter se* and to the partnership and that the right to a partnership accounting de-

manded by Saylor arose under Section 54–1–22. At trial, it was clear from the exhibits that one focus was a partnership accounting of what Sanchez owed Coors and what Coors owed Saylor. One Saylor exhibit actually showed what he alleged were partnership losses and amounts that the partnership owed to Saylor. Saylor testified that Sanchez owed money to the partnership, not Saylor, and that the partnership owed money to Saylor.

{35} At the conclusion of the trial, the court determined that, indeed, Saylor was entitled to reimbursement from the partnership, and the court entered judgment in favor of Saylor and against Coors. The court further determined that the partnership suffered losses, two-thirds of which Sanchez would be required to pay Saylor, although the court proceeded to enter judgment in favor of Coors. The court also determined that both the Coors partnership and Saylor were entitled to an accounting as to their capital accounts and damages.

{36} Two clear images emerge from the presentation of the claims. First, the court was given the basis in equity and law to resolve the liabilities among the partners and the partnership. Second, Sanchez was on notice that Saylor was seeking recovery *of partnership losses* and seeking reimbursement *from the partnership,* and Sanchez permitted Saylor's claims and positions regarding Coors to continue through trial without objection or even clarification as to whether Saylor had the right to seek reimbursement from the partnership or whether a liability of Sanchez to the partnership could be properly adjudicated.

{37} In actions by a partner against another partner or against the partnership, some partnership accounting ordinarily will be necessary. *See Levy,* 106 N.M. at 704, 749 P.2d at 89 (citing *Willey v. Renner,* 8 N.M. 641, 646, 45 P. 1132, 1134 (1896)); *Durham v. Southwest Developers Joint Venture,* 2000–NMCA–010, ¶¶ 31, 32, 128 N.M. 648, 996 P.2d 911. This action involved partnership accounting and dissolution.

{38} We, therefore, are not persuaded by Sanchez's arguments that he was prejudiced by the granting of relief both in favor of and against Coors, by the addition of Coors as a defendant and counterclaimant, and by entry of the amended judgment. Sanchez does not explain what he would have done differently in this case had Coors actually been a named party. We see nothing to support Sanchez's claim of prejudice. "Even if the party has not consented to amendment, a trial court is required to allow it freely if the objecting party fails to show he will be prejudiced thereby." *Schmitz v. Smentowski,* 109 N.M. 386, 390, 785 P.2d 726, 730 (1990). An assertion of prejudice is not a showing of prejudice. *See In re Ernesto M., Jr.,* 1996–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318. *Cf. Teague–Strebeck Motors, Inc. v. Chrysler Ins. Co.,* 1999–NMCA–109, ¶ 11, 127 N.M. 603, 985 P.2d 1183 (failure to name plaintiff was honest mistake arising from course of dealings among the parties, and addition of party caused no prejudice to defendant's ability to defend).

{39} We determine that the parties tried the issues as though Coors was a party. The district court did not abuse its discretion in entertaining and deciding the issues of the liabilities and accounts of Coors and the partners, or in making Coors a formal party in order to effect the relief the court granted in the judgment. The trial judge did not err in entering the amended judgment granting the same relief for and against Coors as granted in the original judgment.

{40} We note *Nelson v. Adams USA, Inc.,* 529 U.S. 460, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000), holding that a post-judgment amendment to impose liability simultaneously with an amendment adding a party violated both the rules of civil procedure and due process of law. *See id.* at 1584. *Nelson* does not require a different result. In *Nelson,* two separate parties were adversaries. No partnership accounting was involved. The issue at hand was not one tried, either implicitly or explicitly, during trial, but rather one of costs and attorney fees after the case was dismissed. *See id.* at 1582. Here, rather than "swift passage from pleading to judgment," *id.* at 1581, the partnership and partner liabilities were tried, and the two sole partners had every opportunity to assert

their positions in prosecution and defense. We therefore do not think that either the rules of civil procedure or due process of law were violated.

### C. The Court Had Jurisdiction Over Coors

{41} Sanchez contends that the court had no jurisdiction to enter the judgment against Coors because at the time of judgment Coors had not been served with process and joined as a party to the action. Sanchez relies on cases that state the general principle that judgment may not be entered against one not a party. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (parent of counterdefendant corporation named in counterclaim but not served; judgment invalid against parent even though counterdefendant stipulated that for purposes of the litigation it would be considered liable for the acts of its parent); *Wirtz*, 1996–NMCA–085, ¶¶ 7–8, 122 N.M. 292, 923 P.2d 1177 (adding members of an Educational Retirement Board as parties); *Lava Shadows, Ltd. v. Johnson*, 121 N.M. 575, 915 P.2d 331 (Ct.App.1996) (motion for judgment against non-party general partner); *Barber v. Emporium Partnership*, 800 P.2d 795, 797 (Utah 1990) (creditor's action where service on defendant individually and not as agent of partnership).

{42} By this argument Sanchez simply tries to sidestep the fact that the action unquestionably was tried as though Coors was a party. None of Sanchez's cases, for example, is an action for a partnership accounting and dissolution in which the parties are the only partners, clearly involving claims and liabilities as between those partners and the partnership itself. Furthermore, Sanchez did not contest the motion to add Coors on the ground that Coors was never independently served with summons and complaint. He was unquestionably on notice of the relief sought and its likely effect on the partnership, and he had a fair opportunity throughout trial to question and clarify the procedural status and oppose the relief sought or Saylor's right to pursue the relief, whether on his own behalf or on behalf of Coors.

{43} The circumstances detailed above that countenance the court's discretion to add Coors as a party post-judgment also support the court's jurisdiction to enter judgment for and against Coors. We hold that the court had jurisdiction to enter the judgment against Coors.

### D. The Court Did Not Err in Awarding Damages to Saylor

{44} Sanchez attacks on several fronts the district court's award against Coors of fees and expenses incurred by Saylor for the benefit of Coors, namely, management fees of $173,577, repairs and maintenance expenses of $121,162, and bookkeeping fees of $57,000.

#### 1. Specificity of Evidence of Unreimbursed Expenses and Bookkeeping Fees

{45} Sanchez argues that Saylor's evidence of unreimbursed expenses and bookkeeping fees was speculative and insufficient to prove damages because accurate documentary evidence such as canceled checks and receipts should have been available, but were neither produced nor proven. The court admitted a "tally" or recap of the repair and maintenance expenses "that [Saylor] or [his] entities made on the property." Saylor testified that he had personal knowledge of each repair: who did it and what it was. The court admitted the tabulation without objection as a summary under Rule 11–1006 NMRA 2000 and found that "Dr. Sanchez quarrels with the items of repair and maintenance, as well as the costs of the same, however offers no testimony or evidence in opposition other than his own personal opinion." Further, the district court found that Saylor was owed $121,162 for actual expenses for repairs and maintenance of partnership real property and $57,000 reimbursement for costs of partnership bookkeeping. Saylor met his burden of proof in establishing these damages, and the findings are supported by substantial evidence.

{46} Sanchez complains he was frustrated in his discovery attempts to obtain Saylor's canceled checks and other records to prove the expenses. He appears to argue that certain evidence should not be considered because of Saylor's pretrial discovery conduct. Sanchez nowhere demonstrates where he raised this in the district court or sought relief below to correct any unresponsive or unfair discovery conduct. We, therefore, decline to address the issue on appeal. Moreover, Sanchez had the right to inspect partnership books and records, including all documentation reflecting repairs, maintenance, and bookkeeping fees. Had Saylor deprived him access to those materials, Sanchez could have obtained judicial relief. He did not. In fact, the court specifically found that "Dr. and Mrs. Sanchez repeatedly failed and refused to inform themselves about the affairs of the Coors partnership, although they had the opportunity to do so at any time."

{47} Sanchez also attacks the award of bookkeeping fees of $57,000 on the grounds that the evidence was speculative and the award contravened the partnership agreement and the statute of frauds. We do not agree. Saylor testified that his oral agreement with Sanchez encompassed the bookkeeping fees; specifically, they would settle up at some point when the property was sold. His tabulation contained a computation that broke down the bookkeeping fees per year from 1981 through 1996, for a total of $57,000 plus accrued interest. By way of footnote only, Sanchez mentions that the court made no finding of an oral agreement that Saylor was entitled to bookkeeping fees. The court found that "[t]hroughout the term of the partnership Richard Saylor provided bookkeeping services on behalf of the partnership, without compensation, and is entitled to reimbursement for the bookkeeping costs." Sanchez did not object to the tabulation. He does not object to the court's finding. He cannot complain on appeal.

{48} Moreover, substantial evidence exists to support the court's finding. Saylor testified that reimbursement for advanced expenses was to occur in the future, when the property was sold. Further, Saylor explained that they had an oral agreement:

> [H]e would say, "Rick, I'm sorry. Right now I just can't put any money in. The bank's watching me like a hawk. I'm just paying huge attorney fees. I'm fighting all of these wars. At some point I'll get past this and we can work it all out on the back side and adjust it up, but I'll make it up to you. We'll make it right."

{49} Sanchez has not shown us how the court erred in failing to find that the reimbursement of the cost of bookkeeping services violated the terms of the partnership agreement barring receipt of salaries or Section 54-1-18(F), forbidding "remuneration for acting in the partnership business." On this point, as on several others in this case, we defer to the district court's assessment where, under the circumstances and facts, "we believe the trial court arrived at a correct result." *Citizens Bank*, 96 N.M. at 376, 630 P.2d at 1231 ("Based upon a cold record on appeal and absent an erroneous application of the law, we will not interfere with the trial court's decision."). The court did not err in awarding $57,000 to Saylor as reimbursement for the cost of bookkeeping fees.

### 2. Duty of Partner to Keep Correct Books; Clear and Convincing Standard

{50} As an extension of his argument that Saylor's evidence of unreimbursed expenses was speculative, Sanchez argues that Saylor breached his duty as managing partner to keep true and correct books of account and to render a complete account of all transactions relating to partnership affairs. Sanchez cites *Rogers v. Stacy*, 63 N.M. 317, 320, 318 P.2d 1116, 1118 (1957) (holding that managing partner committed constructive fraud by failing to make a record of and disclose to other partner every partnership transaction that would affect financial audit prepared in connection with sale of managing partner's partnership interest), and *Dale v. Dale*, 57 N.M. 593, 596, 261 P.2d 438, 439 (1953) (one partner's claim that other partner should pay auditor's compensation because of audit necessity allegedly caused by other partner's failure to keep accurate records).

{51} Sanchez then argues that Saylor did not sustain his burden of proving by clear and convincing evidence that he did not breach this fiduciary duty and thus is not entitled to reimbursement. Sanchez relies on *Oakhill Assocs. v. D'Amato*, 228 Conn. 723, 638 A.2d 31, 33 (1994), and *Cronin v. McCarthy*, 264 Ill.App.3d 514, 202 Ill.Dec. 129, 637 N.E.2d 668, 675 (1994), which hold that a partner sued for breach of fiduciary duty of fair and open dealing and full disclosure must defend with facts proven by clear and convincing evidence.

{52} Sanchez misses the mark. He cannot complain about the expenses, because he did not object to the tabulation containing testimony and regarding the expenses. More importantly, however, Saylor was not sued here to impose liability for damages arising out of a failure to keep accurate records of unreimbursed expenses. Saylor has sued to collect those expenses, and Sanchez attempts to defeat that claim by asserting what appears to be an affirmative defense that Saylor has the burden to prove by clear and convincing evidence that he did not breach his duty to keep accurate records. We find no merit in Sanchez's position. We do not accept his implicit assertion nor must we decide that an affirmative defense of breach of fiduciary duty for failure to keep adequate records exists to bar a partner from recovery of unreimbursed expenses. In this case, the district court determined that Saylor proved his claim for expenses, and we have determined that the court's determination is supported by substantial evidence. For these reasons, Sanchez's purported defense fails.

**3.** *Express Terms of Partnership Agreement and Statute of Frauds*

{53} Sanchez attacks Saylor's recovery of management fees on the grounds that the award of those fees contravened the express terms of the partnership agreement, that Saylor failed to prove an oral contract by clear and convincing evidence, and that the oral contract found by the court violated the statute of frauds.

{54} The court found:

There was an oral agreement between Dr. Sanchez and Richard Saylor, ratified by their respective conduct, with respect to both partnerships, which allowed a reasonable and necessary management fee to be paid to Saylor of 6% of the gross rents received annually for his work in managing the properties owned by the partnerships. These management fees were paid when the partnerships had the funds to do so, and when they did not, Richard Saylor deferred collection until funds would become available. The management fees due Mr. Saylor total $173,577.00

**a.** *Statute of Frauds*

{55} In reading Sanchez's answer to Saylor's counterclaim and the pretrial order, we do not find a defense of the statute of frauds. By his requested findings of fact and conclusions of law, Sanchez sought a finding that NMSA 1978, § 47-1-45 (1949) barred an oral agreement for management fees and real estate commissions. Sanchez, however, abandons that position on appeal and substitutes a contention not raised below, namely, that the oral agreement to pay management fees is barred by the statute of frauds because it constitutes an agreement not to be performed within one year. Sanchez has not shown us where this issue was preserved below, and we decline to address it.

**b.** *Oral Contract*

{56} The district court found the existence of an "oral agreement between Dr. Sanchez and Richard Saylor, ratified by their respective conduct, ... which allowed a reasonable and necessary management fee to be paid to Saylor." Sanchez contends that the partnership agreement and Section 54-1-18(F) preclude any subsequent oral agreement contradicting the express terms of the written agreement. We find no merit in Sanchez's contention.

{57} The partnership agreement provided that the partners were not to receive salaries. Section 54-1-18(F) provides that

[t]he rights and duties of the partners ... shall be determined, subject to any agreement between them, by the following rules:

. . .

F.   no partner is entitled to remuneration for acting in the partnership business.

It is black-letter law that, barring an enforceable agreement to the contrary, an oral agreement modifying the terms of a prior written agreement is enforceable. *See Citizens Bank*, 96 N.M. at 375, 630 P.2d at 1230 ("[T]he New Mexico Uniform Partnership Act applies only when the partners have not made a contrary agreement. *See generally* § 54–1–18."). Moreover, the general rights and duties of partners are "subject to any agreement between them." Section 54–1–18.

{58}   Sanchez then contends that the district court failed to apply a clear and convincing standard of proof in arriving at its finding of an oral contract. He cites *Alvarez v. Alvarez*, 72 N.M. 336, 341, 383 P.2d 581, 584 (1963) (oral contract to convey land removed from operation of statute of frauds by part performance must be proved by clear, cogent and convincing evidence), and *Cox v. Hanlen*, 1998–NMCA–015, ¶ 26, 124 N.M. 529, 953 P.2d 294 (holding that an agreement must be shown by clear, cogent, and convincing evidence to meet the burden of avoiding the statute of frauds with regard to an agreement to reserve an easement that was not contained in a deed). We also reject this contention. *Alvarez* and *Cox* require a higher degree of proof only with regard to oral agreements involving interests in land that for some reason escape the statute of frauds. These cases do not require a clear and convincing burden to prove the oral contract here, because it relates to a partnership agreement, not real estate.

#### 4.   *Statute of Limitation as to Pre–November 1991 Expenses*

{59}   Sanchez claims that the four-year statute of limitation in NMSA 1978, § 37–1–4 (1880), barred Saylor's recovery of expenses, bookkeeping and management fees before November 2, 1991, in that Saylor's counterclaim seeking damages was filed in November 1995. Saylor's counterclaim sought "a full and complete accounting" and dissolution of the partnership. *See* §§ 54–1–22, 54–1–32(A). Under the UPA applicable to the parties, Saylor's right to an accounting accrued at the date of dissolution. *See* § 54–1–43.

{60}   The district court appointed a Rule 11–706 NMRA 2000 expert to complete an accounting of Coors and to take into consideration the effect of the court's findings and conclusions including those regarding Saylor's right to reimbursement. The court concluded that the partners were unable to operate together as partners, and Coors "should thus be dissolved and its affairs promptly wound up."

{61}   We are not persuaded that the specific four-year statute of limitations applies. The life of Saylor's reimbursement claim in this action should be measured by the limitation period for an action for an accounting, rather than that for a specific claim outside of the partnership accounting action. We therefore hold that Saylor's reimbursement claim was not barred under Section 37–1–4.

#### E.   *The Court Erred in Awarding Damages to Coors*

{62}   Sanchez attacks on several fronts the court's award of damages of $522,488 in favor of Coors and against Sanchez because Sanchez refused to provide personal financial statements. This issue arises from a proposed restructuring of partnership debt. Sunwest Bank was to provide financing to Coors so that Coors could restructure its real estate debt to a third party primarily by paying off one or two notes at a substantial discount with a reduction of its monthly payment on remaining debt.

{63}   The documentary evidence on this issue showed the proposed bank financing and included an accounting by Saylor to show damages to Coors because the proposed financing fell through. Trial exhibits set out for the district court the various principal and interest rate reductions and increases contemplated in this debt restructure.

{64}   Saylor contended and the court found that the refinancing fell through because Sanchez refused to provide his financial statements to Sunwest. Saylor testified that Sanchez declined to provide his financial statements because he was in trouble with his bank, that his bank was "coming after

him hard," that he was "worried about trying to keep them from getting everything he had worked for his whole life," and that he was advised by his attorneys not to give anyone his financial statements because they would disclose his assets. Sanchez would not give a reason at trial why he did not want to proceed with the debt restructure. Nevertheless, Sanchez admitted that he did view the proposed debt restructuring to be in the best interest of Coors.

{65} The court found that

[Sanchez's] refusal to provide his personal financial statements was tortious, intentional, willful, and in bad faith, and in breach of his agreement as a general partner to provide personal financial statements when necessary. His refusal was also part of his ongoing efforts to deceive his creditors about his assets.

The court made similar conclusions of law and concluded that Sanchez breached his fiduciary duty to the partnership.

{66} Sanchez contends that the court erred in determining that he had or breached a duty to provide his personal financial statements for the benefit of the partnership. More specifically, he argues that the partnership agreement does not require that he provide financial statements, that one partner cannot force another to provide personal financial statements for a loan application by the partnership, and that the answer to a serious and unresolvable partner disagreement is dissolution. Based on these arguments, Sanchez urges that the $522,488 damages award to Coors against Sanchez for failure to provide financial statements was erroneous. We agree.

{67} The partnership agreement is silent on whether a partner has a duty to provide financial statements, or even whether a partner must cooperate in transactions clearly beneficial to the partnership in a manner that would require the partner to furnish financial statements. Indeed, only one provision in the partnership agreement obligates the partners to act for the benefit of the partnership, namely, paragraph 9: "[e]ach partner ... shall make additional contributions to the capital ... in cash or property ... as may from time to time be agreed upon by the partners." This provision, however, not only is silent on the furnishing of financial statements, but also only requires a partner to contribute capital as "agreed upon by the partners," hardly an obligatory provision when one partner does not agree.

{68} Neither the UPA nor the ULPA applicable to the parties contained a provision placing either a "partnership" duty, or a "fiduciary" duty upon Sanchez to provide his financial statements. To the contrary, UPA Section 54-1-18(E) stated that "all partners have equal rights in the management and conduct of the partnership business." Section 54-1-18(H) stated that "any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners."

{69} The record shows no express oral agreement or particular course of dealing that created a contractual obligation on Sanchez's part to furnish his financial statements. Furthermore, it reflects no agreement or understanding between the parties that the obligation to contribute capital included an obligation to provide any financial statements required to obtain financing from third party sources. In fact, the record contains no testimony of even a discussion in that regard. Further, the district court found no express oral agreement or any course of dealing regarding the financial statements. Our review of the record reflects none.

{70} Saylor asserts the existence of an implied contract. He bases his theory of implied contract on Sanchez's concessions that banks normally require general partners to provide financial statements for financing, that general partners in real estate partnerships expect to have to provide their financial statements in order to obtain partnership financing, that Sanchez never told Saylor that he was reserving the right to refuse to provide his financial statements even if the partnership needed it, and that before his refusal to do so, Sanchez had in the past provided his financial statements. This proof falls short.

{71} No evidence exists in the record that Saylor entered the Coors partnership in reliance upon a statement by Sanchez that Sanchez would furnish his financial statements under any circumstances in which Saylor or the partnership needed him to do so. Nor is there evidence that Saylor ever made the unfailing furnishing of Sanchez's financial statements a condition of his entering the partnership relationship.

{72} That the partnership is one dealing in the buying, selling, and development of real estate, and that the partners have been able to agree on obtaining loans and providing financing statements in the past, do not translate into an implied contractual duty to provide financial statements for every future deal, even if it appears that the deal will benefit the partnership's financial position. Partners may want the flexibility to choose, for whatever reason, not to agree to a particular financing proposal or to provide their financial statements for a loan. They may prefer in a two-partner partnership to leave this option open.

{73} We turn to *Covalt v. High,* 100 N.M. 700, 675 P.2d 999 (Ct.App.1983), the sole New Mexico case on this issue. Covalt and High formed an oral partnership which owned and rented an office to a corporation, CSI, in which Covalt owned 25 percent of the corporate stock and High owned 75 percent. *See id.* at 701, 675 P.2d at 1000. After resigning from CSI, Covalt demanded that the partnership increase CSI's rent, but High took no action. *See id.* The increase in rent would benefit the partnership, but it was detrimental to High. The district court found that CSI could afford the rent increase and High had breached his fiduciary duty. *See id.*

{74} In reversing, this Court stated that "all partners have equal rights in the management and conduct of the business of the partnership," that Covalt therefore "was legally invested with an equal voice in the management of the partnership affairs," and that "neither partner had the right to impose his will or decision concerning the operation of the partnership business upon the other." *Id.* at 703, 675 P.2d at 1002. The fact that a proposal benefitted the partnership did not require High to agree. *See id.* As authority for its decision, *Covalt* cited UPA, Section 54–1–18(H), stating "any difference arising as to ordinary matters connected with the partnership business may be decided by a majority of the partners." Further, the Court relied on the interpretation of the UPA language by the Idaho Supreme Court in *Summers v. Dooley,* 94 Idaho 87, 481 P.2d 318 (1971) that the language is mandatory rather than permissive in nature and means that business differences must be decided by a majority, not by one of two equal partners when the other objects. *See Summers,* 481 P.2d at 320–21.

{75} Simply stated, *Covalt* says that, absent an enforceable agreement covering such circumstances of disagreement, when both partners in a two-partner partnership disagree on an advantageous prospective business transaction, it is dissolution, not an action for breach of fiduciary duty, that is the appropriate avenue of relief. While the court's decision to award damages against Sanchez is understandable from its perception of Sanchez's improper conduct obtained from the trial testimony, something more was required in order to impose liability in this case.

{76} The issue of Sanchez's failure to contribute capital is unrelated to that of his failure to provide financial statements. The district court, considering years of a business relationship based on verbal understandings, relied on vague statements and a course of dealing in finding:

> Richard Saylor and Dr. Sanchez agreed, with respect to both partnerships, that because the partnerships were severely undercapitalized and highly leveraged, the partners would each contribute their share of cash as needed to keep the partnerships afloat.

The court, however, related the Coors refinancing opportunity loss solely to Sanchez's failure to provide his financial statements and not to a failure to provide capital or cash as needed.

{77} We still must consider, however, the court's finding that Sanchez's refusal to provide his personal financial state-

ments was tortious, intentional, willful, and in bad faith. Sanchez's improper conduct clearly influenced the court's thinking and was a backdrop to some of its findings and conclusions. For example, as discussed below in this opinion, the court tied Sanchez's conduct toward his creditors to the court's denial to Sanchez of profits he sought from Saylor's tortious conversion. However, Sanchez's open strategy to assure that his creditors did not discover the extent of his assets does not translate into a tort cause of action against him because that strategy denied the partnership a favorable refinance opportunity.

{78} The record reflects no intent on Sanchez's part to harm or damage the partnership or Saylor. Saylor fails to point to any specific evidence that would support a reasonable inference of intentional, tortious conduct by Sanchez aimed at Saylor or the partnership. While Sanchez's conduct may not have been justifiable vis-à-vis his creditors, we are not prepared to transpose his failure to produce financial statements into an intentional, bad faith, or unjustifiable act in breach of a partnership duty. Nor will we extend the partner's general obligation of good faith to the specific duty sought to be imposed on Sanchez in this case, no matter how tempting it may be in light of the clarity of the lost benefit to the partnership combined with the district court's view of Sanchez's motive.

{79} The partnership law policy issue here is the extent to which an affirmance will do damage to the well-reasoned *Covalt* rule. Without that rule, virtually each instance in which one partner for personal reasons does not agree with a proposed transaction that will benefit the partnership can result in a claim for breach of his or her partnership or fiduciary duty. Absent an enforceable contractual duty to agree, if the two partners cannot agree and do not want to (or cannot) continue their partnership, under *Covalt* the remedy is dissolution.

{80} In sum, the evidence does not support an agreement, express or implied, to provide financial statements. Sanchez had no legal duty as a partner to provide his financial statements. Saylor neither pled nor argued, nor did the court find, the commis-

sion of a tortious act by Sanchez that would give rise to liability and damages for Sanchez's refusal to provide financial statements.

{81} Because we reverse the court's award of $522,488 in favor of Coors and against Sanchez, we need not address Sanchez's other points related to this issue.

F. *The Court's Findings Related to Sanchez's Conversion Claim Are Supported by Substantial Evidence*

{82} Sanchez attacks as unsupported by substantial evidence the district court's findings that the bingo business was not a Coors asset that Saylor converted. Sanchez contends that he and Saylor were partners in a bingo business that was carried on in the Coors property. At trial Sanchez unsuccessfully sought profits of the bingo business on the ground that the bingo business was the partnership's business. He requested findings that the original bingo hall business conducted in the Coors property was owned by and was an asset of Coors; that Saylor caused the lease of the Coors property to the bingo operator, Bingoman, Ltd.; and that Saylor then proceeded to take over Bingoman, Ltd., thereby converting what had been the Coors bingo operation to his own use and benefit.

{83} On appeal, Sanchez sets out historical facts to support his proposed findings, including Saylor's ownership of Bingoman, Ltd. In addition, he challenges eight findings of the court. In clear and significant violation of Rule 12–213(A)(3), Sanchez completely fails to identify in the record any evidence that might support the court's findings. He primarily argues with inferences that the court drew from the evidence, while Saylor sets out evidence that supports the court. Neither party, however, ties the evidence to the court's findings in a manner remotely helpful to this Court.

{84} We are not going to do the parties' jobs for them. Because Sanchez ignored Rule 12–213(A)(3) and Saylor discusses some material evidence on the issue, we determine that the court's findings relating to Sanchez's bingo-conversion claim are supported by substantial evidence.

**G.** *The Court Did Not Err in Denying Sanchez Relief on His Breach of Fiduciary Duty Claim Against Saylor*

{85} Finally, Sanchez also sought to recover profits received by Saylor as a result of the conversion of the shopping center. Sanchez claimed that Saylor breached a fiduciary duty to Sanchez and the partnership by wrongfully acting for his own benefit and gaining an unfair advantage as a partner to the detriment of the partnership, when Saylor used promissory notes payable to RSRS as consideration for his purchase of the shopping center. The facts underlying Saylor's actions are more fully set out above in this opinion.

{86} Sanchez argues that under Section 54–1–21 the court should have ordered Saylor to account for any profits he received as a result of the conversion. Section 54–1–21(A) reads: "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property."

{87} Although the court found that Saylor converted the assets, the court concluded that Sanchez should not recover, based on his own "unclean hands" and "attempt to defraud ... creditors." Sanchez argues that "[t]he court's conclusion that [Sanchez's] 'unclean hands' bar him from the equitable remedy sought to redress Saylor's breach of fiduciary duty is erroneous" as a matter of law. He contends that the key element under the unclean hands doctrine, namely, "that the misconduct must be related to the transaction giving rise to the claim involved ...," is missing. The missing link, in Sanchez's view, is that his attempts to avoid United's collection efforts were completely unrelated to Saylor's conversion of the notes or the purchase and resale of the shopping center property. Therefore, Sanchez contends, the court erred in concluding that Sanchez's claim is barred by the unclean hands doctrine.

{88} It is clear partnership and fiduciary law that a partner must account to the partnership for profits derived without the consent of other partners from a transaction in which the partner converts partnership assets for his own benefit and use. *See* § 54–1–21. Generally, if the partner who is harmed by this breach himself has dirty hands, the test of recovery is whether "'he dirtied them in acquiring the right he now asserts.'" *Mechem v. City of Santa Fe,* 96 N.M. 668, 670, 634 P.2d 690, 692 (1981) (quoting *Republic Molding Corp. v. B.W. Photo Utils.,* 319 F.2d 347, 349 (9th Cir.1963)). Sanchez argues that his attempts to hide his assets from creditors had no relationship to Saylor's conversion and cannot be a bar to his recovery of Saylor's unlawful profiteering.

{89} The district court concluded that Sanchez and his attorney knew of and did not object to the terms of the sale to Saylor and that Sanchez tried to use his own refusal to consent to Saylor's purchase to coerce Saylor into granting Sanchez a dishonest hidden option on the shopping center property. This conclusion of law appears not to square with the court's finding of fact that Saylor never told Sanchez that he agreed to release and discharge the two notes and that Saylor did not advise Sanchez that the shopping center was going to be sold to Saylor individually, free and clear of liens. The court found that Sanchez did not consent to the sale free and clear of liens, after also finding that Saylor did not tell him that the sale was free and clear of liens.

{90} As with other ambiguous or possibly inconsistent findings, however, we resolve them in favor of upholding the court's judgment, if possible. *See Ledbetter,* 103 N.M. at 602, 711 P.2d at 879. We presume that the court did not make inconsistent findings. *See Jacobs,* 108 N.M. at 492, 775 P.2d at 258. The court viewed Sanchez's conduct "as a weapon to extort unfair concessions." Based on this and the conclusion that Sanchez refused to bear any of the risks and burdens of the proposed purchase, the court determined that Sanchez "cannot claim" an interest in profits that were "due entirely to Richard Saylor's investment, skill, and risk taking."

{91} The evidence of Sanchez's misconduct and failure to take advantage of

the purchase opportunity was sufficient to give the district court the basis in equity to determine that Sanchez's conduct prevented his recovery of profits. As discussed in *Homestake Mining Co. v. Mid–Continent Exploration Co.*, 282 F.2d 787, 801 (10th Cir.1960), a constructive trust is "a remedial device employed to accomplish equity.... It is ... injustice ... to permit a person to withhold a claim ... and then to reward him with the profits made possible by the action of another." Here, Sanchez "waited until the enterprise was successful and then swarmed in to recover the windfall." *Id.* The court did not err in failing to grant the damages sought by Sanchez on his claim for profits resulting from Saylor's purchase and resale of the shopping center.

### H. *Conclusion–Sanchez's Appeal*

{92} We hold that the district court had jurisdiction to enter and did not abuse its discretion in entering the May 21 order and May 21 amended judgment and did not err in awarding damages to Saylor, individually, against Coors; that the court erred in awarding damages to Coors against Sanchez; and that the court did not err in denying damages to Sanchez.

### CONCLUSION

{93} We affirm the district court's award in the amended judgment of $250,000 in favor of Sanchez against Saylor. We affirm the district court's denial of other damages to Sanchez. We reverse the district court's award in the amended judgment of $522,488 in favor of Coors against Sanchez. We affirm the district court's award in the amended judgment of $351,739 in favor of Saylor against Coors. We award no costs on appeal.

{94} **IT IS SO ORDERED.**

PICKARD, C.J., and WECHSLER, J., concur.